UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MEDICAL DEVELOPMENT INTERNATIONAL, a Delaware corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; ROBERT SILLEN, in his individual capacity; J. CLARK KELSO, in his official capacity as Receiver; and DOES 1 through 20, inclusive,<br><br>       Defendants. | NO. CIV. S-07-2199 WBS EFB<br><br><u>ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

Defendants Robert Sillen, J. Clark Kelso, and the California Department of Corrections and Rehabilitation ("CDCR") move to dismiss this action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

///

I.   Factual and Procedural Background

On October 3, 2005, in Plata v. Schwarzenegger, No. 01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005),[1] a class action challenging the constitutional adequacy of medical care provided to CDCR inmates with serious medical needs, United States District Judge Thelton E. Henderson established a Receivership to manage the health care systems at the CDCR's various institutions in an attempt to bring the medial care up to constitutional standards.  Judge Henderson subsequently appointed defendant Sillen as the Receiver on February 14, 2006 (effective April 17, 2006) and charged him with the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR."  Plata v. Schwarzenegger, No. 01-1351, slip op. at 2 (N.D. Cal. Feb. 14, 2006) ("Order Appointing Receiver") (hereinafter "OAR").

In a subsequent order on March 30, 2006, Judge Henderson directed the CDCR, now under the control of Sillen, to begin developing new processes for medical contract management.

---

[1] When ruling on a motion to dismiss, the court generally may not consider materials other than the facts alleged in the complaint and documents that are made a part of the complaint. Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  A court may, however, consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted); Branch, 14 F.3d at 454.  Because the authenticity of Judge Henderson's opinions in the Plata line of cases is not disputed and plaintiff repeatedly relies on them, the court will properly consider these rulings.

Plata v. Schwarzenegger, No. 01-1351, slip op. at 5-7 (N.D. Cal. Mar. 30, 2006). Around this same period, the CDCR entered into negotiations with plaintiff--an administrator of prison health care systems--to provide specialty medical services for inmates at two California correctional facilities as part of a pilot program.[2] (Compl. ¶¶ 8, 20-21.) In early September 2006, CDCR officials permitted plaintiff to begin performing services at the two institutions notwithstanding the absence of a final executed contract. (Id. at ¶¶ 25-27.)

Shortly after plaintiff began providing its services, the CDCR staff--noting that plaintiff was not licensed to practice medicine in California--questioned whether plaintiff was functioning in violation of California's prohibition on the corporate practice of medicine.[3] (Id. at ¶¶ 33-34.) By December

---

[2] During the preliminary contract negotiations, plaintiff proposed that its services would consist of

> (a) Enter[ing] agreements with physicians and hospitals to perform medical services at the request of prison medical staff; (b) Assist[ing] prison staff in locating medical specialists outside [plaintiff's] referral network; (c) Implement[ing] a centralized system for scheduling and tracking in and outpatient care; and (d) Implement[ing] a centralized billing system for payment health-care providers.

(Compl. ¶ 21.)

[3] California's statute codifying the "corporate practice of medicine" doctrine provides:

> Corporations and other artificial legal entities shall have no professional rights, privileges, or powers. However, the Division of Licensing may in its discretion, after such investigation and review of such documentary evidence as it may require, and under regulations adopted by it, grant approval of the employment of licensees on a salary basis by licensed charitable institutions, foundations, or clinics, if no charge for professional

3

26, 2006, plaintiff purportedly composed a restructured agreement designed to eliminate this concern and sent it to the CDCR's Division of Correctional Health Care Services for signature. (Id. at ¶ 35.) Plaintiff claims that Sillen then intercepted the agreement before it reached its destination, and thus it was never signed. (Id. at ¶¶ 36-37.)

In January 2007, amid the ongoing concerns regarding the legality of plaintiff's services, Sillen called for a halt to the CDCR's processing of plaintiff's final contract and ordered the CDCR to stop further payments on plaintiff's invoices. (Id. at ¶¶ 36-37.) Plaintiff nonetheless continued providing services without compensation. (Id. at ¶ 42.) During a February 16, 2007 meeting, Sillen renewed his concerns to plaintiff regarding the legality of its services and indicated that plaintiff could be paid only if it was determined that it could lawfully provide services in California. (Id. at ¶ 44.) Plaintiff again continued to provide services to the two institutions, purportedly in reliance on "Mr. Sillen's representations regarding future payment." (Id. at ¶ 45.)

On March 7, 2007, plaintiff provided Sillen with a legal memorandum--drafted by its counsel--that concluded its services were being lawfully provided. (Id. at ¶ 46.) Sillen "refused to accept the opinion," ultimately demanding that plaintiff obtain an official opinion from the Medical Board of California. (Id. at ¶¶ 47-48.) When plaintiff failed to

---

services rendered patients is made by any such institution, foundation, or clinic.

Cal. Bus. & Prof. Code § 2400.

4

promptly comply with his demand, Sillen effectively ended their relationship when he allegedly "physically expelled Plaintiff['s] personnel" from the two CDCR pilot program institutions on April 7, 2007. (Id. at ¶¶ 50-51.)

On September 17, 2007, plaintiff filed a complaint in Sacramento Superior Court against Sillen and the CDCR. In its Complaint, plaintiff alleges fifteen state law causes of action arising from its purported reliance on certain misrepresentations that Sillen and the CDCR made throughout the preliminary contract negotiations. On October 16, 2007, Sillen removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1).[4]

On January 23, 2008, Judge Henderson dismissed Sillen as Receiver, simultaneously appointing J. Clark Kelso as the new Receiver. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kelso, in his official capacity as Receiver, was "automatically substituted as a party" in place of Sillen. Fed. R. Civ. P. 25(d)(1). This substitution was effective only to the extent that Sillen was sued as the Receiver, and thus the individual causes of action against Sillen still remain. Collectively, defendants now move to dismiss the complaint for lack of subject matter jurisdiction.

II. Discussion

Because federal courts are courts of limited jurisdiction only authorized to adjudicate those cases which the

---

[4] Section 1442(a)(1) allows for removal of civil actions commenced in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

5

Constitution and Congress permit, <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss cases inappropriately brought before it based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." <u>Stock W., Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing <u>Cal. ex rel. Younger v. Andrus</u>, 608 F.2d 1247, 1249 (9th Cir. 1979)). On a motion to dismiss an action for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. <u>Kokkonen</u>, 511 U.S. at 377.

 1. <u>The *Barton* Rule</u>

The United States Supreme Court has held that federal common law bars suits against receivers in courts other than the court charged with the administration of the estate. <u>Barton v. Barbour</u>, 104 U.S. 126, 127 (1881). Thus, "a party must first obtain leave of the [appointing] court before it initiates an action in another forum" against a receiver. <u>Beck v. Fort James Corp. (In re Crown Vantage, Inc.)</u>, 421 F.3d 963, 970 (9th Cir. 2005) (citing <u>Muratore v. Darr</u>, 375 F.3d 140, 147 (1st Cir. 2004); <u>Carter v. Rodgers</u>, 220 F.3d 1249, 1252 (11th Cir. 2000); <u>In re Linton</u>, 136 F.3d 544, 546 (7th Cir. 1998); <u>Lebovits v. Scheffel (In re Lehal Realty Assocs.)</u>, 101 F.3d 272, 276 (2d Cir. 1996); <u>Allard v. Weitzman (In re DeLorean Motor Co.)</u>, 991 F.2d 1236, 1240 (6th Cir. 1993)); <u>see also</u> <u>Davis v. Gray</u>, 83 U.S. 203, 218 (1872) (holding that the court appointing a receiver "will

not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or others, without [the court's] consent").

This doctrine, known as the Barton Rule, ensures that the appointing court maintains appropriate control over the administration that is the subject of the receivership. In re DeLorean, 991 F.2d 1236, 1240 (6th Cir. 1993). When presented with a party that has failed to secure the appointing court's consent, the nonappointing court lacks subject matter jurisdiction and must dismiss the action. See In re Kashani, 190 B.R. 875, 884 (B.A.P. 9th Cir. 1995) ("[N]onappointing court may not entertain suits against the [receiver] for acts done in the [receiver's] official capacity without leave from the appointing court because the other court lacks subject matter jurisdiction.").

2. Limited Statutory Exception to the *Barton* Rule

Plaintiff concedes that it did not seek Judge Henderson's permission prior to suing Sillen, and now Kelso. In an effort to avoid dismissal, plaintiff asserts that it is not obligated to request leave because the Receiver's alleged conduct fits the statutory exception to the Barton Rule--codified under 28 U.S.C. § 959(a), which provides that leave of the appointing court is not required when receivers are sued "with respect to any of their acts or transactions in carrying on the business connected with [receivership] property." 28 U.S.C. § 959(a).

Despite its seemingly expansive language, § 959(a) is rarely employed and--when actually utilized by courts--even more narrowly applied. See Beck v. Fort James Corp. (In re Crown

7

Vantage, Inc.), 421 F.3d 963, 971-72 (9th Cir. 2005) ("By its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.'" (quoting Muratore v. Darr, 375 F.3d 140, 144 (1st Cir. 2004))). In fact, the relatively small handful of cases interpreting § 959(a) restrict its application to instances where a receiver or trustee has been sued in his/her capacity as an employer, or for torts committed by agents of the estate/business in receivership during the course of routine or day-to-day operations distinct from the receiver's official responsibilities. See id. at 972 (noting that "[t]he few examples of suits that have been allowed under § 959(a) include a wrongful death action filed against an operating railroad trustee and suits for wrongful use of another's property").

Unlike the cases where leave was not required, plaintiff's causes of action against Sillen do not arise from tortious conduct or negligent acts pursuant to day-to-day, routine, or ordinary business operations unrelated to his official responsibilities. Rather, plaintiff challenges the very core of Sillen's authority and administration of the CDCR medical services system--i.e., duties explicitly prescribed in Judge Henderson's creation of the receivership. See id. (noting that "[a]ctions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate"

under § 959(a)) (internal quotations and citations omitted) (emphasis added).

In Plata, Judge Henderson charged the receivership with the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDRC." OAR at 2 (emphasis added). Judge Henderson supplemented this responsibility by explicitly providing that, in deployment of the aforementioned duties and directives, "the Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court." Id. at 6.

Because plaintiff's lawsuit challenges Sillen's conduct in terminating whatever quasi-contractual relationship may have existed when he suspected illegality on the part of plaintiff, the lawsuit challenges Sillen's conduct in performing the very duties Judge Henderson set up the receivership to perform. Thus, absent Judge Henderson's permission, the Receiver cannot be sued in any jurisdiction other than that of the appointing court. See Carter v. Rodgers, 220 F.3d 1249, 1254 (8th Cir. 2000) (section 959 does not apply when a party contests the receiver's general management and control of the receivership, thus interfering with the receiver's mandate to realize his judicial directive).

Significant interests of public policy support the conclusion that Judge Henderson should have be apprised of the instant matter and be given the initial option to hear the allegations. Specifically, the importance of this matter cannot be separated from its critical backdrop. Unlike typical

receiverships or trusts employed in bankruptcy courts, this is a receivership over a public entity involving matters of constitutional significance. In his original <u>Plata</u> decision, Judge Henderson identified an "unconscionable degree of suffering and death sure to continue if the system is not dramatically overhauled." <u>Plata v. Schwarzenegger</u>, No. 01-1351, 2005 WL 2932253, at *1 (N.D. Cal. Oct. 3, 2005). In an effort to catalyze reform and rehabilitate this "institutional paralysis," <u>id.</u>, Judge Henderson charged the receivership with the express duties that the instant matter now challenges. Judge Henderson would thus be in the best position to evaluate the Receiver's conduct.

Moreover, all of the funds in the hands of the Receiver are public funds. (Def's Reply Mem. in Supp. of Mot. 11:9-11). How those funds should be spent, and the manner in which medical services contracts are awarded and administered in prisons, are all questions appropriate for the appointing court administering the property in receivership. See <u>Barton v. Barbour</u>, 104 U.S. 126, 136 (1881) (allowing party to proceed without appointing court's perspective on the impact of the litigation could result in the "usurpation of the powers and duties which belonged to another court").

### 3. <u>Causes of Action Against the CDCR</u>

The bulk of plaintiff's allegations against the CDCR arise from the CDCR's compliance with Sillen's orders to discontinue payments to plaintiff and withhold the processing of a finalized contract. Because Judge Henderson suspended the CDCR's authority over "the administration, control, management,

10

operation, and financing of the California prison medical health care system" for the duration of the receivership and transferred that authority to Sillen, OAR 4, the CDCR's projects and activities were exclusively under the control of Sillen.[5] See OAR 8 (mandating that all agents and employees of the CDCR are to "<u>fully</u> cooperate with the Receiver in the discharge of his duties") (emphasis in original). Thus, due to the significant overlap in plaintiff's allegations, the interests of judicial economy also support the accompanying dismissal of plaintiff's causes of action with respect to the CDCR.

Accordingly, because plaintiff did not obtain leave from the appointing court before initiating this action, the court will grant defendants' motion to dismiss for lack of subject matter jurisdiction.[6]

///

///

///

---

[5] In an attempt to highlight separate liability as to the CDCR, plaintiff claims that Sillen, subsequent to his designation as Receiver, delegated contractual authority back to the CDCR by allowing then-CDCR director to "retain direct management over the daily operation of the prison medical delivery system." (Compl. ¶ 18.) Not only is this allegation thoroughly unsupported and thus conclusory, see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."), but the proffered language itself does not support the interpretation that Sillen intended to delegate his official authority to control CDCR contracts.

[6] Because the court grants defendants' motion to dismiss, it need not consider the parties' cross-motions to strike extrinsic evidence and exhibits. The subject of the cross-motions--various declarations and party briefs from the Plata line of cases--were not integral to the legal disposition of this matter and thus were not considered.

IT IS THEREFORE ORDERED that defendants' motion to
dismiss plaintiff's complaint be, and the same hereby is,
GRANTED.
DATED:  February 14, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE