UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MEDICAL DEVELOPMENT INTERNATIONAL, a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, ROBERT SILLEN, individually and as Receiver, and J. CLARK KELSO, as Receiver,<br><br>　　　　Defendants.<br>_____/ | NO. CIV. 2:07-2199 WBS EFB<br><br>MEMORANDUM AND ORDER RE: MOTION TO TRANSFER VENUE |

----oo0oo----

Plaintiff Medical Development International ("MDI") brought this action against defendants California Department of Corrections and Rehabilitation ("CDCR"), Robert Sillen ("Sillen"), individually and as Reciever, and J. Clark Kelso ("the Receiver"), as Receiver. Presently before the court is the Receiver's motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

I. Factual and Procedural Background

On October 3, 2005, the Honorable Thelton Eugene Henderson of the Northern District of California issued an opinion in Plata v. Schwarzenegger, No. 01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005),[1] a class action challenging the constitutional adequacy of medical care provided to CDCR inmates with serious medical needs. Id. at *1. In his opinion, Judge Henderson determined that the California prison medical care system was "broken beyond repair." Id.

In response to these systemic defects, Judge Henderson established a Receivership to manage the health care systems at the CDCR's various institutions to bring the medial care up to constitutional standards. Id. Judge Henderson subsequently appointed defendant Sillen as the Receiver on February 14, 2006 (effective April 17, 2006) and charged him with the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." Plata v. Schwarzenegger, No. 01-1351, slip op. at 2 (N.D. Cal. Feb. 14, 2006) ("Order Appointing Receiver") (hereinafter "OAR").

In a subsequent order on March 30, 2006, Judge Henderson directed the CDCR, then under the control of Sillen, to

---

[1] The Receiver filed a Request for Judicial Notice in which he asks the court to take notice of court documents relating to both this action and the Plata case. (Docket No. 62.) The court will grant the Receiver's request, as the documents are all public documents whose accuracy cannot be questioned. Fed. R. Evid. 201; see U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

2

begin developing new processes for medical contract management. Plata v. Schwarzenegger, No. 01-1351, slip op. at 5-7 (N.D. Cal. Mar. 30, 2006). The March 30, 2006 Order required the CDCR to pay "all current outstanding, valid, and CDCR approved medical invoices (even in the absence of a separate written approved contract) within 60 days of the date of this order." Id. at 5. The Order further provided that during a 180-day planning period, "to ensure continuity of medical care, and to mitigate the loss of life or limb and preserve the limited pool of competent providers, CDCR shall not be required to competitively bid medical services contracts nor file bid exemption applications . . . ." Id.

At about this same period, the CDCR entered into negotiations with plaintiff--an administrator of prison health care systems--to provide specialty medical services for inmates at two California correctional facilities as part of a pilot program. (Compl. ¶¶ 8, 20-21.) In early September 2006, CDCR officials permitted plaintiff to begin performing services at the two institutions notwithstanding the absence of a final executed contract. (Id. ¶¶ 25-27.)

Shortly after plaintiff began providing its services, the CDCR staff--noting that plaintiff was not licensed to practice medicine in California--questioned whether plaintiff was functioning in violation of California's prohibition on the corporate practice of medicine. (Id. ¶¶ 33-34.) In January 2007, amid the ongoing concerns regarding the legality of plaintiff's services, Sillen called for a halt to the CDCR's processing of plaintiff's final contract and ordered the CDCR to

stop further payments on plaintiff's invoices. (Id. ¶¶ 36-37.) Plaintiff nonetheless continued providing services without compensation. (Id. ¶ 42.) During a February 16, 2007 meeting, Sillen renewed his concerns to plaintiff regarding the legality of its services and indicated that plaintiff could be paid only if it was determined that it could lawfully provide services in California. (Id. ¶ 44.) Plaintiff again continued to provide services to the two institutions, purportedly in reliance on "Mr. Sillen's representations regarding future payment." (Id. ¶ 45.)

On March 7, 2007, plaintiff provided Sillen with a legal memorandum--drafted by its counsel--that concluded its services were being lawfully provided. (Id. ¶ 46.) Sillen "refused to accept the opinion," ultimately demanding that plaintiff obtain an official opinion from the Medical Board of California. (Id. ¶¶ 47-48.) When plaintiff failed to promptly comply with his demand, Sillen effectively ended their relationship when he allegedly "physically expelled Plaintiff['s] personnel" from the two CDCR pilot program institutions on April 7, 2007. (Id. ¶¶ 50-51.)

On September 17, 2007, plaintiff filed a complaint in Sacramento Superior Court against Sillen (in both his official and individual capacities) and the CDCR. In its Complaint, plaintiff alleges fifteen state law causes of action arising from its purported reliance on certain misrepresentations that Sillen and the CDCR made throughout the preliminary contract negotiations. On October 16, 2007, Sillen removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1).

On January 23, 2008, Judge Henderson dismissed Sillen

as Receiver, simultaneously appointing Kelso as the new Receiver. On February 14, 2008, this court dismissed the action on the ground that plaintiff was required to obtain Judge Henderson's permission to bring an action against the Receiver. (Docket No. 50.) Plaintiff then filed an ex parte application with Judge Henderson in the Northern District requesting leave to file suit against the Receiver, which was denied on the grounds that leave would be futile because the Receiver was immune from suit. Plaintiff appealed both rulings.

The Ninth Circuit reversed in part, finding that permission from the appointing court was unnecessary to sue the Receiver under the statutory exception in 28 U.S.C. § 959(a) and that the Receiver was not immune from suit. Med. Dev. Int'l v. Cal. Dept. of Corr. & Rehab., 585 F.3d 1211, 1216, 1219 (9th Cir. 2009). The Ninth Circuit then remanded the action to this court, noting "that nothing in [its] opinion prevents the Eastern District from coordinating with or, if appropriate, transferring the action to the Northern District." Id. at 1222. The Receiver subsequently filed a motion to transfer the action to the Northern District. (Docket No. 60.) CDCR filed a statement of its non-opposition to the motion to transfer. (Docket No. 66.)

II. Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought." 28 U.S.C. § 1404(a).[2] Under § 1404(a), a district court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). To undertake this analysis of "convenience" and the "interests of injustice," a district court may weigh "multiple factors," including the plaintiff's choice of forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the convenience of witnesses and parties, and the ease of access to sources of proof.[3] Id. at 498-99; see DeFazio v. Hollister Employee Share Ownership Trust, 406 F. Supp. 2d 1085, 1088-89 (E.D. Cal. 2005) (Karlton, J.); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

"No single factor is dispositive and a district court

---

[2] The parties do not dispute that this case could have been brought in the Northern District of California, as defendants appear to be subject to personal jurisdiction in that district and venue would be proper there. See Robinson v. Mich. Consol. Gas Co., 918 F.2d 579, 586 (6th Cir. 1990) (finding actions against a receiver may be brought in the appointing court even without any independent grounds for asserting jurisdiction); Diners Club, Inc. v. Bumb, 421 F.2d 396, 398-401 (9th Cir. 1970); see also Straus Family Creamery v. Lyons, 219 F. Supp. 2d 1046, 1048 (N.D. Cal. 2002) (noting venue in a suit against a state agency is appropriate in any city in which the Attorney General has an office).

[3] Other factors considered by courts include the availability of compulsory process to compel attendance of unwilling non-party witnesses, the location where relevant agreements were negotiated and executed, the state that is most familiar with the governing law, the differences in the costs of litigation in the two forums, the presence of a forum selection clause, and the relevant public policy of the forum state. GNC Franchising, 211 F.3d at 498-99.

has broad discretion to adjudicate motions for transfer on a case-by-case basis." Ctr. for Biological Diversity v. Kempthorne, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing Stewart Org., 487 U.S. at 29; Sparling v. Hoffman Constr. Co., 964 F.2d 635, 639 (9th Cir. 1988)). Ultimately, the party moving for a transfer of venue under § 1404(a) "bears the burden to show that another forum is more convenient and serves the interest of justice." F.T.C. v. Watson Pharm., Inc., 611 F. Supp. 2d 1081, 1086 (C.D. Cal. 2009) (citing GNC Franchising, 211 F.3d at 499).

      The Receiver's primary argument in support of its motion to transfer venue avails the "interests of justice" aspect of the § 1404(a) analysis. Specifically, the Receiver argues that transfer of this action to the Northern District will promote efficiency and save judicial resources in light of the interrelatedness between the Plata case and this action. (Receiver's Mem. I/S/O Mot. Transfer 10:27-11:27.)

      "An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." Am. Canine Found. v. Sun, No. 06-654, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006) (Karlton, J.) (citing A.J. Indus., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 503 F.2d 384, 389 (9th Cir. 1974)); see Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (listing "feasibility of consolidation of other claims" as a factor relevant to the "interests of justice"). Indeed, the Supreme Court and the Ninth Circuit have long recognized that "[t]o permit a situation in which two cases involving precisely

the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Cont'l Grain Co. v. The FBL585, 364 U.S. 19, 26 (1960); see A.J. Indus., Inc., 503 F.2d at 389 ("[T]he pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."); Amazon.com v. Cendent Corp., 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." (quotations and citations omitted)).

While the claims in the Plata case and this action are not identical, this action is nevertheless closely related to the case. The Receiver was appointed in the Plata case and Judge Henderson has overseen the Receivership since he ordered its creation in February 2006. In this action, plaintiff contends that it was authorized to begin its pilot program with the CDCR pursuant to the March 30, 2006 Order in Plata. The March 30, 2006 Order is also a significant source of disagreement between the parties. (See Compl. ¶¶ 16-26; Receiver's RJN Exs. 3, 4.) The interpretation of Judge Henderson's March 30, 2006 Order will likely be dispositive in this action because it will determine whether plaintiff was a medical provider authorized by the Order to begin work for the CDCR without an executed contract or competitive bidding. (See Compl. ¶¶ 23, 25, 30.)

Considerations of judicial economy weigh heavily in

favor of transfer. "Judicial resources are conserved when an action is adjudicated by a court that has already committed judicial resources to the contested issues and is familiar with the facts of the case." Madani v. Shell Oil Co., No. 07-4296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008). To properly adjudicate this action, this court would need to become familiar with the facts giving rise to the March 30, 2006 Order. This would require an investment of a substantial amount time by the court and would result in the expense of significant resources by the parties to fully brief the context giving rise to the March 30, 2006 Order in Plata. Unlike this court, Judge Henderson is intimately familiar with the details of the Plata case, having presided over the matter since April 2001. Given his extensive knowledge of the case and the facts and circumstances giving rise to his Order, Judge Henderson can more efficiently interpret the March 30, 2006 Order than this court.

Transfer of this matter to the Northern District will also ensure consistency in the interpretation of the March 30, 2006 Order, preventing uncertainty about the contractual obligations of the Receiver and CDCR under the Receivership. See In re Genesisintermedia, Inc. Sec. Litig., No. 01-9024, 2003 WL 25667662, at *4 (C.D. Cal. June 12, 2003); Argonaut Ins. Co. v. Mac Arthur Co., No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal. Jan. 18, 2002) ("The best way to ensure consistency is to prevent related issues from being litigated in two separate venues.").

Ultimately, the adjudication of this matter in the Northern District will promote judicial economy, conserve the parties' resources, and avoid inconsistent judgments--all in the

furtherance of the "interests of justice." Accordingly, the interests of justice weigh heavily in favor of transfer. See, e.g., Cardoza v. T-Mobile USA Inc., No. 08-5120, 2009 WL 723843, at *6 (N.D. Cal. Mar. 18, 2009); Bomanite Corp. v. Newlook Int'l, Inc., No. 07-1640, 2008 WL 1767037, at *11 (E.D. Cal. Apr. 16, 2008) (Wanger, J.); Alexander v. Franklin Res., Inc., No. 06-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007); Jolly v. Purdue Pharma L.P., No. 05-1452, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005).

In opposition to the Receiver's motion to transfer venue, plaintiff argues that the court should give weight to plaintiff's choice of forum. While a plaintiff's choice of forum "is typically given considerable weight in the venue analysis. . . [it] is not significant" in a matter where the plaintiff is not a resident of the district the case is brought in. Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharm., No. C02-2010, 2002 WL 31655328, at *3 (N.D. Cal. Nov. 21, 2002) (citing Bryant v. ITT Corp., 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999); Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 54, n.12 (D. D.C. 2000)). Plaintiff's choice of forum was not this court but the Sacramento County Superior Court; it was the defendant who removed the action to this court. Further, plaintiff is a Delaware corporation with its principal place of business in Florida. Accordingly plaintiff's choice of forum should not be given a substantial amount of weight.[4] (Compl. ¶ 1.)

---

[4] Plaintiff also contends that disregarding plaintiff's choice of forum and transferring this action to the Northern District would defeat the purpose of § 959(a) and the Ninth

10

Moreover, while a defendant normally "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986), this premise does not implicate the court's power to transfer an action where the interests of justice so require. See generally Madani, No. 07-4296, 2008 WL 268986, at *2 ("The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." (quoting Wireless Consumers Alliance v. T-Mobile USA, Inc., No. 03-3711, 2003 WL 22387598, at *4 (N.D. Cal. Oct.14, 2003))); accord Amazon.com, 404 F. Supp. 2d at 1261.

Furthermore, the Receiver's arguments supporting transfer arguably promote the mutual "convenience" of the parties through the efficient use of their time and resources, and plaintiff provides scant support for the argument that a transfer from Sacramento to San Francisco would unduly inconvenience the parties. Rather, plaintiff only asserts that it "anticipates propounding extensive discovery requests on the CDCR and Receiver seeking the production of both information and records, including correspondence and emails" relating to contract negotiations of CDCR. (Pl.'s Opp'n Mot. Transfer 6:12-14.)

While San Francisco is approximately ninety miles from

---

Circuit's ruling in this matter. This argument is clearly belied by the Ninth Circuit's own opinion, which specifically states that "nothing in this opinion prevents the Eastern District from coordinating with or, if appropriate, transferring the action to the Northern District." Med. Dev. Int'l, 585 F.3d at 1222.

11

Sacramento, the inconvenience of transferring the action is not considerable. As previously mentioned, plaintiff is a Delaware corporation, with its principal place of business in Florida. Plaintiff provided medical services to prisons located in Southern California. Plaintiff and defendants' counsel reside in San Francisco. There is no overwhelming nexus between this action and the Eastern District, outside of the fact that the Receiver and CDCR are located in Sacramento. Plaintiff has not indicated how it would be materially inconvenienced by issuing discovery requests for electronic and paper documents a mere ninety miles from Sacramento. Plaintiff has also not identified any witnesses that would be inconvenienced by discovery and forced to travel to San Francisco.

The Receiver has carried his burden under § 1404(a) and demonstrated that the interests of justice favor transferring this action to the Northern District. These considerations weigh heavily against plaintiff's choice of forum, particularly since any inconvenience incident to transfer appears to be negligible. Accordingly, the court will grant defendant's motion to transfer venue.

IT IS THEREFORE ORDERED that the Receiver's motion to transfer venue to the Northern District of California be, and the same hereby is, GRANTED. The Clerk shall transmit the file to the Clerk of the District Court for the Northern District of California (San Francisco Division) for further proceedings.

DATED: January 21, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE