1    BENNETT J. LEE (Bar No. 230482)
     blee@wthf.com
2    GARRETT E. DILLON (Bar No. 216811)
     gdillon@wthf.com
3    SARA K. HAYDEN (Bar No. 262922)
     shayden@wthf.com
4    WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
     333 Bush Street, Suite 1500
5    San Francisco, California  94104
     Telephone  415-623-7000
6    Facsimile  415-623-7001

7    Attorneys for Plaintiff
     MEDICAL DEVELOPMENT INTERNATIONAL
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11   MEDICAL DEVELOPMENT                    CASE NO. C 10-00443 TEH
     INTERNATIONAL, a Delaware
12   corporation,                           **FIRST AMENDED COMPLAINT FOR:**

13                  Plaintiff,              **1. BREACH OF CONTRACT;**
                                            **2. WRONGFUL TERMINATION OF**
14   v.                                     **   CONTRACT;**
                                            **3. PROMISSORY ESTOPPEL;**
15   THE CALIFORNIA DEPARTMENT OF           **4. QUANTUM MERUIT/UNJUST**
     CORRECTIONS AND                        **   ENRICHMENT;**
16   REHABILITATION; J CLARK KELSO,         **5. ASSUMPSIT;**
     in his capacity as receiver; and DOES 1   **6. ACCOUNT STATED;**
17   through 20, inclusive,                 **7. VIOLATIONS OF CALIFORNIA'S**
                                            **   PROMPT PAYMENT ACT;**
18                  Defendants.             **8. NEGLIGENT MISREPRESENTATION;**
                                            **9. FALSE PROMISE;**
19                                          **10. ECONOMIC DURESS; and**
                                            **11. ABUSE OF PROCESS**
20

21                                          **JURY TRIAL DEMANDED**

22              **FIRST AMENDED COMPLAINT**

23          COMES NOW, Plaintiff, MEDICAL DEVELOPMENT INTERNATIONAL ("MDI"), by

24   its counsel, and for its First Amended Complaint ("FAC") against Defendants THE

25   CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (the "CDCR"),

26   J. CLARK KELSO in his capacity as receiver (the "Receiver"), and DOES 1 through 20.

27   / / /

28   / / /

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

                                            FIRST AMENDED COMPLAINT

**PARTIES**

1.     Plaintiff MDI is incorporated in the State of Delaware and has its principal place of business in Ponte Vedra Beach, Florida.  MDI is authorized to transact business in the State of California, and has continuously met all regulatory requirements necessary to perform the work described in this FAC.

2.     Defendant CDCR is a Department of the State of California and the various correctional facilities throughout the state are not considered to be distinct legal entities.  CDCR, its subsidiary divisions and its agents at the individual correctional facilities shall be known collectively as "CDCR."

3.     Defendant Mr. J. Clark Kelso ("Mr. Kelso") is a federal receiver appointed by Order of this Court.  Mr. Kelso replaced the previously appointed receiver, Mr. Robert Sillen, who was appointed on April 17, 2006.  Mr. Kelso is sued in his capacity as a receiver (the "Receiver"), and in regard to all actions preceding his appointment taken by Mr. Sillen as receiver, and is so designated in the relevant causes of action enumerated herein.

4.     DOES 1 through 20, inclusive, are sued herein under fictitious names.  MDI is ignorant of the true names or capacities of the defendants sued herein under the fictitious names DOE 1 through 20, inclusive.  When their true names and capacities are ascertained, MDI will amend this FAC by inserting their true names and capacities herein.  MDI is informed and believes, and thereon alleges that each of the fictitiously named defendants is in some fashion legally responsible for MDI's damages.  MDI is informed and believes further and thereon alleges that each of said fictitiously named DOE defendants 1 through 20, inclusive, and each of them, was the agent, partner, alter ego, employee and/or servant of the defendants, acting within the scope of such agency, partnership, alter ego and/or employment, and with the permission and consent of each of the other defendants, and each is in some manner legally responsible for, and proximately caused, any injuries and damages to MDI alleged herein, and/or each otherwise has an interest in the matters adjudicated herein.

**VENUE AND JURISDICTION**

5.     This action is in front of this Court as a result of the Receiver's motion for removal

1    from the Superior Court of the State of California, County of Sacramento to the United States

2    District Court for the Eastern District of California ("Eastern District") and the Receiver's motion

3    for transfer from the Eastern District to this Court.

4        6.    MDI has complied with the requirements of California Government Code section

5    900 *et seq.* and properly exhausted all administrative remedies prior to bringing this action.  MDI

6    presented a Government Claim for damages to the California Victim Compensation and

7    Government Claims Board on July 26, 2007 pursuant to the requirements of Government Code

8    sections 915 and 915.2.  Pursuant to Government Code section 912.4(c), the Government Claim

9    has been denied.  Therefore, pursuant to Government Code section 945.4, MDI is authorized to

10   bring this action before the Court at this time.

11                                **FACTUAL BACKGROUND**

12       7.    MDI is one of the largest private administrators of prison health care systems in

13   the United States, presently serving federal, state, and private prison institutions across the

14   country.  Headquartered in Florida, MDI specializes in providing administrative services designed

15   to facilitate the timely and cost-effective delivery of health care to incarcerated persons.  The

16   Federal Bureau of Prisons has used MDI's services for more than ten years to manage the

17   logistics of arranging hundreds of thousands of treatment encounters for inmates with private

18   health care professionals.  Working at the exclusive direction of prison medical staff, MDI uses

19   proprietary software tools, and a network of health care providers, to deliver on requests for

20   inpatient and outpatient treatment.

21       8.    On October 3, 2005, this Court issued an opinion in Plata v. Schwarzenegger, 2005

22   WL 2932253 (N.D. Cal.) determining that the California prison medical care system was "broken

23   beyond repair," and finding that the "harm already done . . . to California's inmate population

24   could not be more grave and the threat of future injury . . . all but guaranteed in the absence of

25   drastic action."  This Court underlined the urgency of reform by noting "it is an uncontested fact

26   that, on average, an inmate in one of California's prisons needlessly dies every six to seven days

27   due to constitutional inefficiencies in the CDCR's medical delivery system."

28       9.    In recognition of these alarming systemic defects, this Court appointed Mr. Sillen

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 3 -                    FIRST AMENDED COMPLAINT

1    to serve as the Receiver in control of California's prison medical care system pursuant to a

2    February 14, 2006 court order ("February Order").[1]   According to the February Order, the

3    Receiver was tasked with "bringing the level of medical care provided to California's 166,000

4    inmates up to federal constitutional standards." Furthermore, this Court declared that time was of

5    the essence, and instructed the CDCR to take "immediate and short-term measures designed to

6    improve medical care."

7        10.    This Court's February Order cautioned the Receiver to "make all reasonable

8    efforts to exercise his powers, as described in the [February Order], in a manner consistent with

9    California state law," while allowing that the Receiver may petition this Court for a waiver of

10   state law if deemed necessary to effectuate the purpose of the federal receivership.

11       11.    On February 22, 2006, this Court directed a court-appointed expert ("Correctional

12   Expert") to investigate and report to the Receiver regarding the status of: (1) state contracts

13   relating to health care services for inmates confined by the CDCR; (2) state contract negotiations

14   relating to health care services for CDCR inmates; and (3) contractual payments to service

15   providers who provide health care services to CDCR inmates.

16       12.    The Correctional Expert authored a report (the "Report"), in consultation with Dr.

17   Peter Farber-Szekrenyi, then Director of Correctional Health Care Services at the CDCR

18   (hereafter "Dr. Farber-Szekrenyi"), and Mr. Darc D. Keller, then Assistant Secretary in the Office

19   of Health Care Policy at the CDCR (hereafter "Mr. Keller"),[2] that assessed the status of state

20   contracts related to the delivery of health care services to California inmates, and the existing

21   process for procuring and paying for such medical services.  The report was filed with this Court

22   on March 27, 2006.

23       13.    The Report noted that the acquisition of, and payment for, inmate health care was

24   dangerously stymied by a lumbering agency bureaucracy:

25           *The CDCR process for negotiating, processing, renewing, and payment of medical
            contracts has collapsed.*  Hundreds, if not thousands of critical health care
26          contracts are, as of today, in limbo because existing contracts with well-established

27   _____
     [1] After initial identification, MDI will refer to both Mr. Sillen and Mr. Kelso as the "Receiver."
28   [2] Both Dr. Farber-Szekrenyi and Mr. Keller were legislatively appointed to positions within the CDCR in
     2005 largely to assist with the restructuring of California's health care delivery system.

1   providers at every CDCR prison have expired, or are about to expire. Under the
2   new rules, these contracts cannot be renewed because of a competitive bid
    requirement. Likewise, necessary new contracts for critical care cannot, and have
3   not been established.

4   [Emphasis in the original]

5       14.     This Court found the Report damning, declaring "[t]he Report sets forth another

6   chilling example of the inability of the CDCR to competently perform the basic functions

7   necessary to deliver constitutionally adequate medical health care."  This Court emphasized that

8   the "administrative processes" governing the execution of medical health care contracts between

9   the CDCR and private companies were unduly "time-consuming" and "complex," often forcing

10  providers to work without formally finalized contracts.  This Court further noted that bureaucratic

11  inefficiencies resulted in chronic nonpayment of health care providers, thereby forcing providers

12  to seek compensation by filing an administrative claim with the California Victims and

13  Government Claims Board.  This Court, citing to the Report, warned that the prison health care

14  crisis could grow worse as private health care providers refused to engage in business with the

15  CDCR for fear of nonpayment.  In fact, at the time the Report was issued, the CDCR had a

16  backlog of outstanding invoices for health care services totaling tens of millions of dollars.

17      15.     In order to remedy this state of disrepair, this Court, in a March 30, 2006 court

18  order ("March Order"), mandated, in section B of the March Order, that the CDCR pay all

19  "outstanding, valid and *CDCR-approved* medical invoices (even in the absence of a separate

20  written approved contract) within 60 days of the date of this Order." [Emphasis added].  This

21  Court described this mandate as an "emergency payment process."  Additionally, pursuant to this

22  emergency payment process, this Court required the CDCR to continue to "pay received invoices

23  for services . . . until new processes are in place."   While the emergency payment process

24  remained in effect, paragraph B.4 of the March Order explicitly exempted the CDCR from both

25  the competitive bidding and bid exemption application requirements, so as to enable the timely

26  execution of new health care provider contracts while the state contracting system was revamped.

27  To that end, the March Order vested the CDCR, and specifically Dr. Farber-Szekrenyi, with the

28  mandate and authority to develop and enforce interim emergency regulations as deemed

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 5 -                          FIRST AMENDED COMPLAINT

1    necessary. A true and accurate copy of the March Order is attached as Exhibit A.

2         16.    According to the March Order, the emergency procedures were to remain in place

3    during a 180-day "planning period" from the date the order was issued, March 30, 2006.

4    However, on November 8, 2006, in a supplemental court order, this Court extended the

5    "emergency payment and no-bid provisions set forth in the [March] Order" indefinitely.

6    Therefore, the November 8, 2006 order ("November Order") extended the CDCR's obligations to

7    pay the outstanding, valid and "CDCR-approved" medical invoices received pursuant to

8    agreements with private contractors indefinitely.  A true and accurate copy of the November

9    Order is attached as Exhibit B.

10        17.    In or around April 2006, the Receiver made the decision to allow the Division of

11    Correctional Health Care ("DCHC"), and Dr. Farber-Szekrenyi as Director of DCHC, to "retain

12    direct management over the daily operation of the prison medical delivery system."  Dr. Farber-

13    Szekrenyi's direct management responsibilities, as delegated by the Receiver pursuant to the

14    March Order, included controlling "medical contracts processing, recruitment, hiring, and human

15    resource transaction" as related to the delivery of medical treatment to CDCR inmates.  This

16    management responsibility was endorsed by the Receiver until December 2006.

17        18.    In response to the March Order, the Receiver issued a letter to all then-existing

18    CDCR service providers on May 1, 2006.  The letter, in a public effort to encourage the private

19    sector to "continue to work with [the Receiver and the CDCR] while [the Receiver and the

20    CDCR] reform California's medical care system," reaffirmed the Receiver's commitment to:

21        (1) Payment, within 60 days, of more than $58 million in past-due bills that have
           been submitted by medical care providers to the CDCR;
22

23        (2) Timely payment of valid and approved bills submitted by clinical providers to
           the CDCR in the future; and
24

25        (3) The establishment of health care orientated policies and standards to govern
           CDCR medical contract management.

26        19.    Imbued with the express authority provided by the March Order, and instilled with

27    a pressing sense of urgency to quickly improve the delivery of health care to sick inmates, the

28    CDCR engaged MDI to participate in a pilot program at the California State Penitentiary, Los

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT

1    Angeles ("LAC") and the California Correctional Institution in Tehachapi ("CCI"). The CDCR

2    recognized that a core problem for prison staff was non-medical in nature – namely, the

3    technologically ill-equipped and understaffed bureaucracy responsible for finding doctors,

4    scheduling treatments, and paying health care providers was simply too slow and unwieldy.

5    Consequently the CDCR sought to explore whether MDI's state-of-the-art proprietary software

6    systems and administrative expertise could provide crucial logistical efficiencies to the health

7    care delivery process at the aforementioned institutions (hereafter the "Pilot Program").

8        20.    By March 2006, the CDCR had entered into advanced negotiations with MDI. On

9    March 8, 2006, MDI submitted to the CDCR a detailed proposal regarding the range of services

10   MDI intended to provide to LAC and CCI prison staff, including a full disclosure of the proposed

11   pricing of said services. Pursuant to the March Order, the CDCR engaged MDI in direct

12   negotiations in an effort to provide the necessary health services to inmates as quickly as possible.

13   Subsequently, in the final days of August 2006, the CDCR provided MDI with a copy of a

14   completed and signed "Justification for Contract Services Form," and a completed and signed

15   "Bid/Contract Request" form (hereinafter the "Contract Documents"). The "Bid/Contract

16   Request" included a detailed statement of work that, in conjunction with MDI's March 8

17   proposal, comprehensively defined the scope of services MDI agreed to provide to LAC and CCI

18   medical staff, calculations of payments, and base contract price. Specifically, the parties agreed

19   that MDI would:

20       (a.)   Enter into agreements with physicians and hospitals whereby those physicians and
              hospitals agree to perform medical services at the request of prison medical staff;
21

22       (b.)   Assist prison staff in locating medical specialists outside MDI's referral network;

23       (c.)   Implement a centralized system for scheduling and tracking in and outpatient care;

24       (d.)   Implement a centralized billing system for payments claims by health-care
              providers; and
25

26       (e.)   Receive prompt compensation from the CDCR for all contracted for services.

26       21.    Further, in order to ensure the most comprehensive, efficient, and cost-effective

27   access to health care professionals and facilities, MDI agreed to initially pay the invoices

28   submitted by providers treating prisoners before submitting its invoice to, and receiving payment

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 7 -                           FIRST AMENDED COMPLAINT

1  from, the CDCR.  The CDCR in turn agreed to reimburse MDI for those payments.  Under this

2  arrangement, hospitals and physicians are protected from any late payment by the prison

3  institution, as MDI ensures timely payment, and thus providers are more willing to remain

4  available and responsive to prison medical staff at competitive rates.  This business model,

5  however, while bestowing many critical improvements to the process of delivering health care to

6  inmates, imposed a substantial financial risk on MDI if the CDCR failed to timely reimburse

7  MDI.

8      22.     The CDCR expressly authorized and ordered MDI to begin work at the beginning

9  of September 2006 in accordance with the March Order and the Contract Documents.

10     23.     The CDCR management instructed the CDCR staff at CCI and LAC to cooperate

11  with MDI and provide MDI access to CDCR facilities and computer networks.  This included

12  providing CDCR clearance to physically enter LAC and CCI, issuing contractor access badges,

13  and publicly recognizing MDI's authority to direct certain work at CCI and LAC (e.g., change

14  scheduling practices).

15     24.     Although all material contract terms had been agreed to and reduced to writing

16  between the parties prior to September 1, 2006, both the CDCR and MDI were mutually aware

17  that a separate final contract had not been issued.  However, MDI and the CDCR, relying on the

18  emergency payment processes set forth in the March Order, and acting pursuant to the authority

19  delegated to the CDCR by the Receiver, entered into a binding contract on August 31, 2006

20  without waiting for a separate approval to filter through the many hurdles of the state

21  bureaucracy.  The Contract Documents constituted a valid and enforceable written contract by

22  and between MDI and the CDCR.  The CDCR gave MDI notice to proceed with the work on

23  September 1, 2006.

24     25.     The CDCR repeatedly assured MDI that it was contractually and legally

25  committed to paying for the services rendered, and that the CDCR considered the executed

26  Contract Documents a valid written contract for services.  The CDCR represented to MDI that it

27  was customary for contractors employed by the CDCR to begin work prior to having a formal

28  contract, even without the emergency procedures in place, due to the lengthy contract approval

1    process.   Further, CDCR in-house counsel had internally cleared the CDCR to proceed with

2    contracting pursuant to the emergency contracting procedures set forth in the March Order.

3         26.    In response to, and in reliance upon, the emergency contracting authority provided

4    by the March Order, the execution of the Contract Documents, the extenuating health care

5    emergency facing the prison populations at LAC and CCI, the CDCR's repeated and express

6    representations, and the CDCR's directive to proceed on September 1, 2006, MDI provided a

7    range of crucial administrative services to both LAC and CCI beginning in September 2006 until

8    April 2007.

9         27.    In just a few months, utilizing MDI's software tools and logistical expertise, the

10   CCI staff eliminated a backlog of over 100 specialty appointments, reduced the average length of

11   stay for inpatient treatment from 12 days to 3 days, and dramatically reduced medical grievances

12   voiced by inmates.   Most importantly, MDI's information systems increased the number of

13   specialty services delivered at the prison ten-fold, thereby preserving precious transportation and

14   custody resources for those with more pressing outpatient medical needs.   As a result of these

15   achievements, the CCI staff and a representative of the Prison Law Office[3] found that MDI's

16   consulting services had resulted in CCI satisfying the required standards for medical care within

17   just three months.

18        28.    At LAC, MDI created a more dramatic improvement.   The LAC health services

19   and custody staff eliminated a backlog of over 400 specialty appointments, 250 of which were

20   performed on-site, again preserving transportation and custody resources for those in greatest

21   need of outpatient care.   Further, MDI's consulting services reduced medical grievances from an

22   average of 350 per month to just 120, and virtually eliminated a 55% cancellation rate for medical

23   appointments.[4]

24        29.    On November 2, 2006, Dr. Farber-Szekrenyi issued a formal memorandum to CCI

25   and LAC, with a copy to MDI, to explain MDI's legal position as a CDCR contractor.   Dr.

---

[3] The Prison Law Office is the entity that originally initiated the class action lawsuit culminating in the appointment of the Receiver.

[4] In fact, MDI was so successful that wardens from other institutions in California requested MDI's services, having heard from CCI and LAC staff of the enormous progress made.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT

1   Farber-Szekrenyi explained that MDI was part of a pilot program intended to "fully assess the
2   ability of MDI to meet most, if not all, of an institution's service needs," and declared that all
3   invoices submitted by MDI were to be paid "utilizing the March 30 Plata Court Order as
4   authorization."

5        30.     Mr. John Hagar ("Mr. Hagar"), the Receiver's chief of staff, was informed by
6   CDCR staff of MDI's contract in or around November 2006, at the latest.

7        31.     In or around the first week of December 2006, the Receiver decided to assume
8   direct management responsibility for the day-to-day operation of the "prison medical delivery
9   system," previously delegated to Dr. Farber-Szekrenyi.  In so doing, the Receiver nonetheless
10   publicly acknowledged: "I am not criticizing the efforts of Peter Farber-Szekrenyi and the
11   dedicated staff of the Division of Correctional Health Services who continue to attempt in good
12   faith to correct the intractable problems with inadequate resources."

13        32.     In or around December 2006, after MDI had successfully provided necessary
14   services to the CDCR for approximately four months, a CDCR staff member internally raised the
15   idea that MDI may be engaging in the corporate practice of medicine.

16        33.     Dr. Farber-Szekrenyi, recognizing the importance of MDI's services, appointed a
17   CDCR staff attorney to work with MDI to either draft a restructured agreement for services that
18   alleviated the CDCR's alleged concerns regarding compliance with medical licensing provisions
19   or to report that no such agreement is possible.

20        34.     By December 26, 2006, the CDCR approved a jointly prepared restructured
21   agreement.  Dr. Farber-Szekrenyi was informed that the contract had been amended to eliminate
22   any concern that MDI may potentially be engaging in the corporate practice of medicine.  Mr.
23   Keller was informed that a copy of the restructured agreement was being sent to Dr. Farber-
24   Szekrenyi for his signature.

25        35.     In early January 2007, having not yet received any documents, Dr. Farber-
26   Szekrenyi inquired as to the status of the restructured agreement.  At that time, Dr. Farber-
27   Szekrenyi was informed that Mr. Hagar had abruptly seized the new agreement.

28        36.     Dr. Farber-Szekrenyi then met with Mr. Hagar to discuss the reasons for the

1   interference with MDI's contract, and was informed that the Receiver believed MDI's work

2   constituted the corporate practice of medicine, despite the CDCR's express opinion to the

3   contrary. Mr. Hagar, acting on behalf of the Receiver, declared that the Receiver had therefore

4   suspended the process of finalizing the contract and unilaterally stopped payments on all invoices

5   submitted by MDI. Mr. Hagar made it clear that the Receiver would exclusively decide the fate

6   of MDI's contract, despite the CDCR's endorsement of MDI's performance.

7       37.    The last payment MDI received from the CDCR was on January 5, 2007. Prior to

8   Mr. Hagar's involvement the CDCR never disputed MDI's invoices.

9       38.    In an effort to understand and address the actions of the Receiver and his

10   representatives, MDI continuously attempted to engage the Receiver and his representatives in

11   discussions regarding the frozen invoice payments.

12       39.    During the latter part of January 2007, Dr. Farber-Szekrenyi and Mr. Keller also

13   engaged in efforts to arrange a meeting between MDI and the Receiver to secure payments owed

14   by the CDCR to MDI. The Receiver refused to meet with MDI until February 16, 2007.

15       40.    However, during December 2006 and January 2007, following the Receiver's

16   assumption of the day-to-day management of the CDCR's health care contracting and delivery

17   system, the Receiver held three all-day meetings with certain CDCR employees. The goal of

18   these meetings was four-fold:

19       (a.)   to identify the current projects and activities underway and determine
20              which projects should continue;

21       (b.)   to identify additional critical projects or activities to initiate in the near
22              future;

23       (c.)   to identify those important projects that will not be initiated in the near
24              future; and

24       (d.)   to prioritize and allocate resources for selected projects and activities.

25   Despite the Receiver's full awareness of MDI's situation at the time of this review, at no time

26   following these meetings, and prior to April 6, 2007, was MDI directed to stop providing services

27   to LAC or CCI, or instructed to stop paying health care providers for medical care given to

28   CDCR inmates. Rather, upon concluding an assessment of projects and activities under the

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 11 -                    FIRST AMENDED COMPLAINT

1   control of the Receiver during December 2006 and January 2007, which included MDI's contract,

2   the Receiver merely determined it necessary to "seek the waiver of state laws and regulations

3   from the Court as necessary to ensure professional and timely contracting process."

4          41.     Despite the Receiver's decision to withhold all payment, MDI recognized the

5   ongoing threat to inmate life, and, at the urging of the CDCR and in reliance on the emergency

6   payment process set forth in the March Order, MDI continued providing services to LAC and

7   CCI without compensation.

8          42.     On the morning of February 16, 2007, the Receiver met with Dr. Farber-Szekrenyi

9   and terminated him.  At that time, the Receiver informed Dr. Farber-Szekrenyi that MDI would

10  never be paid.

11         43.     Subsequently, during the afternoon of February 16, 2007, more than a month

12  following the initial suspension of payment, the Receiver finally met with MDI.  The Receiver

13  noted that MDI was "unfortunately, doing a good job," but reiterated his opinion that MDI

14  required a medical license to perform its services, an opinion that was contrary to that of the

15  CDCR's own legal department.  The Receiver represented that MDI could be paid for services

16  rendered if it were determined that MDI needed no medical license, despite knowing that he

17  would not pay MDI for services rendered under any circumstances.  The Receiver then instructed

18  MDI to continue its work at LAC and CCI without payment.  When MDI expressed reservations

19  about continuing under such circumstances, the Receiver declared that, should MDI fail to follow

20  his direction, he would "make sure MDI never worked in California again."

21         44.     Following the February 16, 2007 meeting, fearing for its future ability to do

22  business in California, MDI felt that it had no choice but to continue to provide services pursuant

23  to the requirements of the Pilot Program, and relied on the emergency payment process of the

24  March Order and the Receiver's representations regarding future payment.

25         45.     On March 7, 2007, MDI provided the Receiver with a legal opinion letter from

26  retained counsel explaining that a medical license was unnecessary for the kind of non-medical

27  administrative work performed by MDI.

28         46.     After that legal opinion was issued to the Receiver, MDI attempted, on several

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 12 -                          FIRST AMENDED COMPLAINT

1   occasions, to schedule another meeting with the Receiver to address any remaining concerns.

2   The Receiver rejected all overtures, and refused to accept the opinion and alternative contract

3   proposals previously accepted by the CDCR's legal department.

4        47.     Nonetheless, despite his previous representation to Dr. Farber-Szekrenyi that he

5   would not pay MDI, the Receiver, on March 26, 2007, demanded that MDI procure an advisory

6   opinion, within ten days, from the Medical Board of California.   The Medical Board of

7   California, by its own admission, does not, as a matter of practice, provide advisory opinions

8   within such a short time at the request of a private party.

9        48.     Further, the Receiver demanded that MDI release confidential information

10   regarding MDI's contractual arrangements with the health care providers in its referral network.

11        49.     In response to the Receiver's demands, MDI offered to provide the proprietary

12   information, but requested that the Receiver sign a confidentiality agreement to prevent that

13   information from leaking into the marketplace.   Again, the Receiver failed to respond to this

14   request for confidentiality.

15        50.     Despite MDI's substantial efforts to comply with all of the Receiver's demands, on

16   April 7, 2007, the Receiver terminated all contact with MDI and physically expelled MDI

17   personnel from LAC and CCI without warning.

18        51.     The CDCR's and the Receiver's actions, resulting in the non-payment and

19   eventual termination of MDI, disrupted a working solution to the prison medical health care crisis

20   and jeopardized the State of California's ability to procure and retain private sector health care

21   services necessary to the well-being of California's inmate population.   The CDCR's and the

22   Receiver's actions regarding MDI have prevented inmates at various CDCR facilities from timely

23   acquiring specialized medical care and perpetuated a reluctance within the private sector, as

24   observed by this Court in the March Order, to contract with the CDCR.

25        52.     The CDCR and the Receiver must rely on private sector support to resolve the

26   prison health care crisis as the CDCR cannot provide the services that MDI provides.   MDI is

27   informed and believes that the Receiver served a Request for Proposals on August 10, 2007,

28   seeking consultants to assist the CDCR in establishing a method for providing the same services

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

1  MDI was previously providing pursuant to the Contract Documents.

2  53.    The CDCR's and the Receiver's attempts to prevent MDI from providing crucial

3  healthcare related services pursuant to the Contract Documents have placed the life and safety of

4  the CDCR's inmate population at risk. Unless judicial action is taken to hold the CDCR and the

5  Receiver accountable, the ability of the State of California to remedy the existing health care

6  crisis, and in particular, contract with private sector health care providers, will remain critically

7  impeded.

8  54.    MDI has incurred significant monetary losses for the work performed for the

9  CDCR at LAC and CCI during the period from September 2006 through April 2007. The

10  information systems implemented by MDI bestowed a significant benefit upon the State of

11  California and its inmate population, and compensation has been unlawfully withheld by the

12  CDCR and the Receiver.

13  55.    As a direct result of the Receiver wrongfully terminating MDI, MDI also lost the

14  expected profits of its contract with the CDCR.

15  56.    The Receiver has made good on his threats that he would "make sure MDI never

16  worked in California again." Since MDI was improperly terminated, it has been denied at least

17  two state contracts on which it was either the lowest qualified bidder or a subcontractor to the

18  lowest qualified bidder due, in part, to perceived "conflicts of interest" between MDI and the

19  CDCR.

20  **FIRST CAUSE OF ACTION**

21  **(FOR BREACH OF CONTRACT AGAINST ALL DEFENDANTS)**

22  57.    MDI incorporates by reference all of the above paragraphs as if each were fully

23  alleged herein.

24  58.    In or around March 2006, MDI submitted to Dr. Farber-Szekrenyi a detailed

25  proposal offering administrative solutions to the CDCR's medical health care delivery crises.

26  The proposal included a comprehensive statement of work and a full disclosure of the pricing

27  structure for the offered services.

28  59.    Following receipt of MDI's proposal, MDI and the CDCR engaged in months of

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 14 -                    FIRST AMENDED COMPLAINT

1    arms-length negotiations regarding the scope, price, terms, and feasibility of a prospective

2    contract for the provision of services by MDI to the CDCR.

3         60.    On or about August 31, 2006, the CDCR provided MDI with an executed copy of

4    the Contract Documents. The Contract Documents, together with MDI's proposal, set forth all

5    material terms of the services MDI was expected to provide to LAC and CCI staff as a CDCR

6    contractor, including a comprehensive scope of work, an explanation of payment calculations for

7    the performance of services, and a statement of the base contract price. The Contract Documents

8    constituted a valid and enforceable written contract by and between MDI and the CDCR.

9         61.    Pursuant to the emergency contracting authority provided by the March Order, and

10   the Receiver's express delegation of contracting authority to DCHS, Dr. Farber-Szekrenyi

11   possessed the legal authority to enter into a valid and binding contract with MDI on behalf of the

12   CDCR and the Receiver, and in fact did so.

13        62.    The CDCR ordered MDI to begin providing administrative services pursuant to the

14   executed Contract Documents, representing that the Contract Documents constituted a legally

15   binding agreement. The CDCR further acknowledged the existence of a legal binding agreement

16   by allowing MDI personnel access to secure CDCR facilities and instructing CDCR staff to

17   comply with directions from MDI pursuant to the terms of the Contract.

18        63.    The CDCR further acknowledged the existence of a binding contract by informing

19   MDI that any additional involvement in the contracting process by representatives of the State of

20   California and/or the Receiver affecting or involving the executed Contract Documents

21   constituted a mere formality and presented no bar to the binding effect of the Contract

22   Documents.

23        64.    The CDCR also acknowledged the existence of a binding contract by repeatedly

24   promising that the CDCR was bound to pay MDI for its services in accordance with the Contract

25   Documents.

26        65.    The execution of the Contract Documents, combined with the emergency

27   contracting authority imbued to the CDCR and the Receiver by the March Order, Dr. Farber-

28   Szekrenyi's authority to enter into contracts of behalf of the CDCR and the Receiver, and the

1    CDCR's representations to MDI, conclusively demonstrate the existence of a valid and legally

2    enforceable contract between MDI and the CDCR.

3        66.    The executed Contract Documents formed a valid written contract and the CDCR

4    had a contractual obligation and legal duty, *inter alia*, to make full and timely payments due

5    pursuant to the Contract Documents.

6        67.    MDI has performed all things on its part to be performed under the Contract

7    Documents, except to the extent it has been legally excused.

8        68.    In or around December 2006, the CDCR, at the direction of the Receiver,

9    wrongfully failed to make all payments due to MDI for services performed pursuant to the

10   Contract Documents and thereby failed to perform, without excuse or justification, a material

11   covenant of the Contract Documents.

12       69.    On or about April 6, 2007, the CDCR and the Receiver wrongfully prevented MDI

13   from continuing to perform its obligations pursuant to the Contract Documents by physically

14   expelling MDI personnel from CDCR facilities without notice or justification.

15       70.    The failure to make contractually required payments for MDI's services, followed

16   by the CDCR and the Receiver withholding access to CDCR facilities on or about April 6, 2007,

17   constitute a material and total breach of the Contract Documents.

18       71.    The Contract Documents further imposed an implied duty of good faith and fair

19   dealing upon the CDCR and the Receiver in the performance of any rights, obligations and duties

20   possessed by the CDCR and the Receiver and/or owed to MDI pursuant to the Contract

21   Documents.

22       72.    The CDCR and the Receiver consciously and deliberately failed and refused to

23   discharge its responsibilities consistent with their duty of good faith and fair dealing by

24   wrongfully withholding payments from MDI for services rendered, which frustrated the agreed

25   common purposes of the parties to the Contract Documents and disappointed the reasonable

26   expectations of MDI by depriving it of the benefits of the agreement.

27       73.    The CDCR and the Receiver consciously and deliberately failed to discharge their

28   responsibilities consistent with their implied duty of good faith and fair dealing by wrongfully

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 16 -

FIRST AMENDED COMPLAINT

1  refusing to execute a revised and modified contract between MDI and the CDCR in or around

2  December 2006.

3      74.    The Receiver also has made good on his threats that he would "make sure MDI

4  never worked in California again."  Since MDI was improperly terminated, it has been denied at

5  least two state contracts on which it was either the lowest qualified bidder or a subcontractor to

6  the lowest qualified bidder due, in part, to perceived "conflicts of interest" between MDI and the

7  CDCR.

8      75.    As a direct and proximate result of the CDCR's and the Receiver's material

9  breaches of the Contract Documents, MDI has sustained substantial damages to be determined

10  according to proof.  These damages include the amounts due to MDI for services performed and

11  for the lost future profit under the contract.

12      76.    MDI's damages also include, without limitation, the loss of future business and

13  profits on other California contracts, which was a foreseeable and intended result of the CDCR's

14  and the Receiver's material breaches of the contract.

15      77.    As a direct result of the CDCR's and the Receiver's material breaches of the

16  Contract Documents, the CDCR and the Receiver have placed the life, health and safety of

17  CDCR's inmate population at risk.  MDI's lawsuit will therefore result in the enforcement of an

18  important right affecting the public interest, namely unobstructed and unfettered access to private

19  health care services that the CDCR itself cannot provide.

20      78.    Under the circumstances herein presented, the necessity and financial burden of

21  enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

22  Procedure section 1021.5.

23      79.    The attorneys' fees incurred in the enforcement of this right should not, in the

24  interests of justice, be paid out of MDI's recovery.

25      WHEREFORE, MDI prays for relief as hereinafter set forth.

26  / / /

27  / / /

28  / / /

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 17 -                FIRST AMENDED COMPLAINT

**SECOND CAUSE OF ACTION**

**(FOR WRONGFUL TERMINATION OF CONTRACT AGAINST ALL DEFENDANTS)**

80.     MDI incorporates by reference all of the above paragraphs as if each were fully alleged herein.

81.     The CDCR and the Receiver had a material duty, pursuant to the Contract Documents, not to wrongfully terminate the Contract.

82.     The CDCR and the Receiver had a duty, pursuant to the Contract Documents, to render, in good faith, decisions regarding the termination of the Contract.

83.     The CDCR and the Receiver breached their obligations pursuant to the Contract Documents by wrongfully terminating MDI on April 6, 2007, without notice or justification.

84.     The CDCR and the Receiver consciously and deliberately failed and refused to discharge their responsibilities consistent with their implied duty of good faith and fair dealing by wrongfully terminating MDI and ejecting MDI personnel, without warning or justification, from CDCR facilities in or around April 6, 2007.

85.     The Receiver has made good on his threats that he would "make sure MDI never worked in California again."  Since MDI was improperly terminated, it has been denied at least two state contracts on which it was either the lowest qualified bidder or a subcontractor to the lowest qualified bidder due, in part, to perceived "conflicts of interest" between MDI and the CDCR.

86.     As a direct and proximate result of the CDCR's and the Receiver's wrongful termination of the Contract, MDI has sustained substantial damages to be determined according to proof.  These damages include the amounts due to MDI for services performed and for the lost future profit under the contract.

87.     MDI's damages also include without limitation the loss of future business and profits on other California contracts, which was a foreseeable and intended result of the CDCR's and the Receiver's wrongful termination of the Contract.

88.     As a direct result of the CDCR's and the Receiver's wrongful termination of the Contract, the CDCR and the Receiver have placed the life, health and safety of the CDCR's

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT

1  inmate population at risk. MDI's lawsuit will therefore result in the enforcement of an important

2  right affecting the public interest, namely unobstructed and unfettered access to private health

3  care services that the CDCR itself cannot provide.

4      89.    Under the circumstances herein presented, the necessity and financial burden of

5  enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

6  Procedure section 1021.5.

7      90.    The attorneys' fees incurred in the enforcement of this right should not, in the

8  interests of justice, be paid out of MDI's recovery.

9      WHEREFORE, MDI prays for relief as hereinafter set forth.

10                        **THIRD CAUSE OF ACTION**

11              **(FOR PROMISSORY ESTOPPEL AGAINST ALL DEFENDANTS)**

12      91.    MDI incorporates by reference all of the above paragraphs as if each were fully

13  alleged herein.

14      92.    On or about March 8, 2006, MDI submitted to Dr. Farber-Szekrenyi a detailed

15  proposal regarding the range of services MDI intended to provide to LAC and CCI prison staff,

16  including a full disclosure of the proposed pricing of said services. On or about August 31, 2006,

17  the CDCR provided MDI with a copy of the completed and signed Contract Documents, which

18  included a detailed statement of work that, in conjunction with MDI's March 8 proposal,

19  comprehensively defined the scope of services MDI should provide to LAC and CCI medical

20  staff.   The CDCR then ordered MDI to begin providing services pursuant to the Contract

21  Documents, stating that the execution of a final contract was a mere formality, and that the

22  executed Contract Documents themselves constituted the necessary written authorization for MDI

23  to begin work. Further, Dr. Farber-Szekrenyi expressly stated that the CDCR would pay MDI for

24  its services pursuant to the executed Contract Documents.

25      93.    The CDCR's express representations of fact that the CDCR would pay MDI for its

26  services were clear and unambiguous, and constituted a promise that the CDCR would pay MDI

27  for the services MDI was to provide in accordance with the Contract Documents.

28      94.    MDI actually and justifiably relied upon the CDCR's promise and immediately

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 19 -                              FIRST AMENDED COMPLAINT

1    began providing services at both LAC and CCI due to the expectation of compensation.

2        95.    The CDCR's promise was clearly intended to induce MDI to provide services

3    pursuant to the Contract Documents, and MDI's reliance on the CDCR's promise is both

4    reasonable and foreseeable.

5        96.    As a direct and proximate cause of the CDCR's and the Receiver's promise to pay

6    MDI for its services, MDI incurred not less than $4 million in costs, for which the CDCR and the

7    Receiver have wrongfully refused to pay.

8        97.    As a direct result of the CDCR's and the Receiver's failure to perform their

9    promise and make payment to MDI for its services, MDI has sustained a substantial detriment in

10   the form of uncompensated expenditures and lost profits in an amount to be determined according

11   to proof.

12       98.    As a direct result of the CDCR's and the Receiver's failure to perform their

13   promise and make payment to MDI for its services, MDI has sustained a substantial detriment in

14   the form of loss of future business and profits on other California contracts, which was a

15   foreseeable and intended result of the CDCR's and the Receiver's failure to perform its promise

16   to make payment to MDI.

17       99.    As a direct result of the CDCR's and the Receiver's failure to perform its promise

18   and make payment to MDI for its services, the CDCR and the Receiver have placed the life,

19   health and safety of the CDCR's inmate population at risk.  MDI's lawsuit will therefore result in

20   the enforcement of an important right affecting the public interest, namely unobstructed and

21   unfettered access to private health care services that the CDCR itself cannot provide.

22       100.   Under the circumstances herein presented, the necessity and financial burden of

23   enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

24   Procedure section 1021.5.

25       101.   The attorneys' fees incurred in the enforcement of this right should not, in the

26   interests of justice, be paid out of MDI's recovery.

27       WHEREFORE, MDI prays for relief as hereinafter set forth.

28   ///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 20 -                    FIRST AMENDED COMPLAINT

**FOURTH CAUSE OF ACTION**

**(FOR QUANTUM MERUIT/UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)**

102.    MDI incorporates by reference all of the above paragraphs as if each were fully alleged herein.

103.    Beginning in September 2006, MDI began providing services at both LAC and CCI, pursuant to, *inter alia*, the terms of the Contract Documents and the March Order's emergency procurement measures.

104.    The reasonable value of said work, labor, and services that were rendered and performed, and of such goods and materials that were furnished, delivered and installed at the request of the CDCR substantially exceeds the payments made to MDI by the CDCR.

105.    The services provided by MDI, including paying for medical services provided to CDCR inmates, conferred a substantial and undisputed benefit on the CDCR and the Receiver.

106.    MDI has been damaged due to nonpayment, and the CDCR and the Receiver have been unjustly enriched, in an amount to be determined according to proof.

107.    MDI is entitled to recover against the CDCR and the Receiver the reasonable value of the work, labor, services, and such goods and materials provided by MDI.

108.    As a direct and proximate result of the acts and omissions identified herein, the amount owing by the CDCR and the Receiver to MDI exceeds the jurisdictional minimum of the Court.

109.    As a direct result of the CDCR's and the Receiver's failure to make payment to MDI, the CDCR and the Receiver have placed the life, health and safety of the CDCR's inmate population at risk. MDI's lawsuit will therefore result in the enforcement of an important right affecting the public interest, namely unobstructed and unfettered access to private health care services that the CDCR itself cannot provide.

110.    Under the circumstances herein presented, the necessity and financial burden of enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil Procedure section 1021.5.

111.    The attorneys' fees incurred in the enforcement of this right should not, in the

WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 21 -

FIRST AMENDED COMPLAINT

1   interests of justice, be paid out of MDI's recovery.

2       WHEREFORE, MDI prays for relief as hereinafter set forth.

3   ## FIFTH CAUSE OF ACTION

4   ### (FOR ASSUMPSIT AGAINST ALL DEFENDANTS)

5       112.   MDI incorporates by reference all of the above paragraphs as if each were fully
6   alleged herein.

7       113.   On or about March 8, 2006, MDI submitted to the CDCR a detailed proposal
8   regarding the range of services MDI intended to provide to LAC and CCI prison staff, including a
9   full disclosure of the proposed pricing of said services.

10      114.   On or about August 31, 2006, the CDCR provided MDI with an executed copy of
11  the Contract Documents.  The CDCR ordered MDI to begin providing services pursuant to these
12  Contract Documents, stating that the execution of a separate final contract was a mere formality
13  and that the executed Contract Documents themselves constituted the necessary written
14  authorization for MDI to begin work.   Further, Dr. Farber-Szekrenyi and other CDCR
15  representatives expressly stated to MDI that the CDCR would pay MDI for its services pursuant
16  to the Contract Documents.

17      115.   Pursuant to the CDCR's stated commitment to pay MDI for the services it
18  provided, the CDCR and the Receiver had a duty, *inter alia*, to make full and timely payments
19  due pursuant to the Contract Documents.

20      116.   Pursuant to the CDCR's express statements to pay MDI for the services it
21  provided, MDI began providing services pursuant to the terms of the Contract Documents.

22      117.   Subsequent to the CDCR's express statements that it would pay MDI for all
23  services rendered pursuant to the Contract Documents, the CDCR paid MDI for a portion of the
24  services provided through January 5, 2007.

25      118.   In or around January 2007, at the direction of the Receiver, the CDCR wrongfully
26  stopped making payments to MDI for services performed pursuant to the Contract Documents.
27  MDI received its last payment from the CDCR on January 5, 2007.

28      119.   By accepting MDI's continued services pursuant to the Contract Documents, the

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 22 -                   FIRST AMENDED COMPLAINT

1    CDCR and the Receiver are presumed to have accepted the terms upon which MDI agreed to

2    provide services, and assented to receive MDI's services in exchange for payment.

3        120.    By accepting MDI's continued services pursuant to the Contract Documents, the

4    CDCR and the Receiver became indebted for any and all unpaid services rendered by MDI.

5        121.    As a direct and proximate cause of the CDCR's and the Receiver's breach of their

6    duty to make payment to MDI for services rendered, MDI has sustained substantial damages to be

7    determined according to proof.  These damages include the amounts due to MDI for services

8    performed and for the lost future profit under the contract.

9        122.    As a direct result of the CDCR's and the Receiver's breach of their duty to make

10   payment to MDI for services rendered, the CDCR and the Receiver have placed the life, health

11   and safety of the CDCR's inmate population at risk.  MDI's lawsuit will therefore result in the

12   enforcement of an important right affecting the public interest, namely unobstructed and

13   unfettered access to private health care services that the CDCR itself cannot provide.

14       123.    Under the circumstances herein presented, the necessity and financial burden of

15   enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

16   Procedure section 1021.5.

17       124.    The attorneys' fees incurred in the enforcement of this right should not, in the

18   interests of justice, be paid out of MDI's recovery.

19       WHEREFORE, MDI prays for relief as hereinafter set forth.

20                              **SIXTH CAUSE OF ACTION**

21               **(FOR ACCOUNT STATED AGAINST ALL DEFENDANTS)**

22       125.    MDI incorporates by reference all of the above paragraphs as if each were fully

23   alleged herein.

24       126.    An account was stated in writing by and between MDI and the CDCR within one

25   year prior to the filing of the original Complaint in the Superior Court of the State of California

26   where it was agreed that the CDCR and the Receiver were indebted to MDI in the sum of not less

27   than $4 million.

28       127.    Although MDI demanded payment from the CDCR and the Receiver pursuant to

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 23 -                        FIRST AMENDED COMPLAINT

1    the account, neither all, nor any part of the agreed sum, has been paid since January 5, 2007.

2         128.   The CDCR and the Receiver are indebted to MDI for money due in the sum of not

3    less than $4 million for services rendered by MDI to the CDCR at the special instance and request

4    of the CDCR for which the CDCR agreed to pay MDI.

5         129.   There is now due, owing and unpaid from the CDCR and the Receiver, the sum of

6    not less than $4 million, plus interest at the legal rate thereon.

7         130.   As a direct result of the CDCR's and the Receiver's failure to pay MDI for

8    services rendered, the CDCR and the Receiver have placed the life, health and safety of the

9    CDCR's inmate population at risk.  MDI's lawsuit will therefore result in the enforcement of an

10   important right affecting the public interest, namely unobstructed and unfettered access to private

11   health care services that the CDCR itself cannot provide.

12        131.   Under the circumstances herein presented, the necessity and financial burden of

13   enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

14   Procedure section 1021.5.

15        132.   The attorneys' fees incurred in the enforcement of this right should not, in the

16   interests of justice, be paid out of MDI's recovery.

17             WHEREFORE, MDI prays for relief as hereinafter set forth.

18                            **SEVENTH CAUSE OF ACTION**

19       **(FOR VIOLATIONS OF CALIFORNIA PROMPT PAYMENT ACT AGAINST ALL**

20                                  **DEFENDANTS)**

21        133.   MDI incorporates by reference all of the above paragraphs as if each were fully

22   alleged herein.

23        134.   California Government Code section 927, *et seq.* (hereafter "California's Prompt

24   Payment Act"), requires all state agencies to promptly pay properly submitted and undisputed

25   invoices incurred pursuant to a contract for services with a business.

26        135.   The CDCR is a state agency within the meaning of California's Prompt Payment

27   Act and hence subject to its prompt payment requirement.

28        136.   This Court authorized the Receiver to operate the CDCR.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 24 -                          FIRST AMENDED COMPLAINT

137. The CDCR acquired the services of MDI pursuant to a contract for services within the meaning of Government Code section 927.1(a)(1).

138. Since the execution of the Contract Documents between MDI and the CDCR, MDI has properly submitted numerous invoices to the CDCR that are undisputed within the meaning of California's Prompt Payment Act.

139. The CDCR and the Receiver have failed to pay undisputed invoices properly submitted by MDI as required by Government Code section 927.1(a)(1) and/or Government Code section 927.4. Consequently, pursuant to California's Prompt Payment Act, the CDCR and the Receiver have failed to provide prompt payment for services rendered and are automatically subject to late payment penalties.

140. Pursuant to California Government Code sections 927.3 and 927.4, due to the CDCR's and the Receiver's violations of California's Prompt Payment Act, MDI is entitled to payment of statutory penalties from the CDCR and the Receiver at the rate of one percent above the rate accrued on June 30th of the prior year by the Pooled Money Investment Account, not to exceed a rate of fifteen percent, on the improperly withheld progress payments until such time the CDCR and the Receiver properly submit payment of the outstanding invoices in accordance with Government Code section 927.6.

141. As a direct result of the CDCR's and the Receiver's violation of the Prompt Payment Act, the CDCR and the Receiver have placed the life, health and safety of the CDCR's inmate population at risk. MDI's lawsuit will therefore result in the enforcement of an important right affecting the public interest, namely unobstructed and unfettered access to private health care services that the CDCR itself cannot provide.

142. Under the circumstances herein presented, the necessity and financial burden of enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil Procedure section 1021.5.

143. The attorneys' fees incurred in the enforcement of this right should not, in the interests of justice, be paid out of MDI's recovery.

WHEREFORE, MDI prays for relief as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

**(FOR NEGLIGENT MISREPRESENTATION AGAINST RECEIVER)**

144.   MDI incorporates by reference all of the above paragraphs as if each were fully alleged herein.

145.   On February 16, 2007, more than a month after the suspension of payment, MDI met with the Receiver to discuss the ongoing relationship between MDI and the CDCR.  At that time, the Receiver stated that MDI was doing an "excellent job" but expressed reservations about a potential corporate practice of medicine issue and opined that MDI required a license to provide the services negotiated under the contract.  The Receiver represented that MDI could be paid for services rendered if it determined that MDI needed no medical license, despite knowing that he would not pay MDI for services rendered under any circumstances.

146.   The foregoing representations by the Receiver that MDI had an opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine or medical licensure issues were untrue.

147.   Regardless of the Receiver's actual belief regarding MDI's opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine, the representations were made without any reasonable grounds for believing them to be true.

148.   The representations regarding MDI's opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine were made with the intent to induce MDI to continue performing services at LAC and CCI without pay.

149.   MDI was unaware of the untruthfulness of the Receiver's representations regarding MDI's opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine.

150.   MDI reasonably and justifiably relied on the Receiver's representations regarding MDI's opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine, obtained a legal opinion concluding that a medical license was not necessary, made repeated efforts to otherwise meet the Receiver's various demands, fruitlessly sought to engage the Receiver in further negotiations, and most importantly, continued to provide

1    services to the CDCR as per the terms of the Contract Documents without pay.

2        151.   As a direct and proximate result of the Receiver's negligent representations and

3    MDI's reliance thereon, MDI was wrongfully deprived of payment for services rendered to the

4    CDCR.

5        152.   MDI has suffered damages as a result of the Receiver's negligent

6    misrepresentations that are in excess of the minimum jurisdictional amount of this Court, the

7    exact amount of which will be proven at trial.

8        153.   As a direct result of the Receiver's negligent representations and MDI's reliance

9    thereon, the life, health and safety of the CDCR's inmate population has been placed at risk.

10    MDI's lawsuit will therefore result in the enforcement of an important right affecting the public

11    interest, namely unobstructed and unfettered access to private health care services that the CDCR

12    itself cannot provide.

13        154.   Under the circumstances herein presented, the necessity and financial burden of

14    enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

15    Procedure section 1021.5.

16        155.   The attorneys' fees incurred in the enforcement of this right should not, in the

17    interests of justice, be paid out of MDI's recovery.

18        WHEREFORE, MDI prays for relief as hereinafter set forth.

19                           **NINTH CAUSE OF ACTION**

20                 **(FOR FALSE PROMISE AGAINST RECEIVER)**

21        156.   MDI incorporates by reference all of the above paragraphs as if each were fully

22    alleged herein.

23        157.   On February 16, 2007, more than a month after the suspension of payment, MDI

24    met with the Receiver to discuss the ongoing relationship between MDI and the CDCR. At that

25    time, the Receiver stated that MDI was doing an "excellent job" but expressed reservations about

26    a potential corporate practice of medicine issue and opined that MDI required a license to provide

27    the services negotiated under the contract. The Receiver represented that MDI could be paid for

28    services rendered if it were determined that MDI needed no medical license, despite knowing that

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

           FIRST AMENDED COMPLAINT

1     he would not pay MDI for services rendered under any circumstances.

2         158.   The foregoing representation by the Receiver that MDI had an opportunity to

3 correct any alleged problems or defects regarding the issue of the corporate practice of medicine

4 or medical licensure issues was a promise made without an intent to honor or perform it.

5         159.   MDI was unaware of the Receiver's intent to disregard his promise at the time the

6 promise as made.

7         160.   MDI reasonably and justifiably relied on the Receiver's false promise regarding

8 MDI's opportunity to correct any alleged problems or defects regarding the issue of the corporate

9 practice of medicine, obtained a legal opinion concluding that a medical license was not

10 necessary, made repeated efforts to otherwise meet the Receiver's various demands, fruitlessly

11 sought to engage the Receiver in further negotiations, and most importantly, continued to provide

12 services to the CDCR as per the terms of the Contract Documents without pay.

13         161.   As a direct and proximate result of the Receiver's false promise and MDI's

14 reliance thereon, MDI was wrongfully deprived of payment for services rendered to the CDCR.

15         162.   MDI has suffered damages as a result of the Receiver's false promise that are in

16 excess of the minimum jurisdictional amount of this Court, the exact amount of which will be

17 proven at trial.

18         163.   As a direct result of the Receiver's false promise, the life, health and safety of the

19 CDCR's inmate population has been placed at risk.  MDI's lawsuit will therefore result in the

20 enforcement of an important right affecting the public interest, namely unobstructed and

21 unfettered access to private health care services that the CDCR itself cannot provide.

22         164.   Under the circumstances herein presented, the necessity and financial burden of

23 enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

24 Procedure section 1021.5.

25         165.   The attorneys' fees incurred in the enforcement of this right should not, in the

26 interests of justice, be paid out of MDI's recovery.

27         WHEREFORE, MDI prays for relief as hereinafter set forth.

28     / / /

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

- 28 -              FIRST AMENDED COMPLAINT

## **TENTH CAUSE OF ACTION**

## **(FOR ECONOMIC DURESS AGAINST RECEIVER)**

166.   MDI incorporates by reference all of the above paragraphs as if each were fully alleged herein.

167.   On or about August 31, 2006, MDI and the CDCR entered into a valid written contract for services pursuant to which MDI would provide health care related information systems to the CDCR in return for payment.

168.   In or around January 2007, the Receiver unilaterally declared that all payments to MDI by the CDCR for services rendered pursuant to the contract were to be halted.  However, the Receiver also demanded that MDI continue to perform under the terms of the Contract Documents without payment.

169.   On February 16, 2007, after multiple requests by MDI to set a meeting with the Receiver to discuss his actions, MDI met with the Receiver to discuss the ongoing relationship between MDI and the CDCR and the Receiver's unilateral declaration that all payments be halted. At that meeting, the Receiver stated that MDI was doing an "excellent job" and ordered MDI to continue to perform.   MDI expressed reservations about continuing work without receiving payment.   In response, the Receiver threatened MDI, stating that if MDI failed to continue providing services, he would make sure MDI never worked in California again.

170.   The Receiver's threat was wrongful and unlawful.

171.   The Receiver, as the federal receiver in control of the entire Californian prison health care market, possessed the authority to exclude MDI from conducting business with the State of California prison system, one of the largest in the nation.  The weight of the Receiver's threat deprived MDI of the right to exercise its business decisions with an unfettered free will.

172.   As a result of the Receiver's threat, and fearing for its future ability to do business in California, MDI was forced to continue providing services to the CDCR without payment for the purpose of protecting its business interests in the State of California and avoiding exclusion from California's prison health care market.

173.   The Receiver has made good on his threats that he would "make sure MDI never

1   worked in California again." Since MDI was improperly terminated, it has been denied at least

2   two state contracts on which it was either the lowest qualified bidder or a subcontractor to the

3   lowest qualified bidder due, in part, to perceived "conflicts of interest" between MDI and the

4   CDCR.

5        174.   As a direct and proximate result of the Receiver's wrongful threat and his acting

6   on this threat, MDI has suffered damages in excess of the minimum jurisdictional amount of this

7   Court, the exact amount of which will be proven at trial.

8        175.   As a direct and proximate result of the Receiver's threat and his acting on his

9   threat, MDI has sustained a substantial detriment in the form of loss of future business and profits

10   on other California contracts, which was a foreseeable and intended result of the Receiver's threat

11   and acting thereon.

12        176.   As a direct result of the Receiver's wrongful threat, the life, health and safety of

13   the CDCR's inmate population has been placed at risk. MDI's lawsuit will therefore result in the

14   enforcement of an important right affecting the public interest, namely unobstructed and

15   unfettered access to private health care services that the CDCR itself cannot provide.

16        177.   Under the circumstances herein presented, the necessity and financial burden of

17   enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil

18   Procedure section 1021.5.

19        178.   The attorneys' fees incurred in the enforcement of this right should not, in the

20   interests of justice, be paid out of MDI's recovery.

21        WHEREFORE, MDI prays for relief as hereinafter set forth.

22   **ELEVENTH CAUSE OF ACTION**

23   **(FOR ABUSE OF PROCESS AGAINST RECEIVER)**

24        179.   MDI incorporates by reference all of the above paragraphs as if each were fully

25   alleged herein.

26        180.   On or about August 31, 2006, MDI and the CDCR entered into a valid written

27   contract for services pursuant to which MDI would provide health care related information

28   systems to the CDCR in return for payment.

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT

181.    Pursuant to the terms of the emergency procedures set forth in the March and November Orders, the CDCR was mandated to pay all "outstanding, valid and CDCR-approved medical invoices (even in the absence of a separate written approved contract)" for an indefinite period.

182.    The Receiver knew of the executed Contract Documents between MDI and the CDCR as well as this Court's March and November Orders.

183.    In or around January 2007, the Receiver unilaterally declared that all payments to MDI by the CDCR for services rendered pursuant to the contract were halted.  However, the Receiver also demanded that MDI continue to perform under the terms of the Contract Documents without payment.

184.    On February 16, 2007, after multiple requests by MDI to set a meeting with the Receiver to discuss his actions, MDI met with the Receiver to discuss the ongoing relationship between MDI and the CDCR and the Receiver's unilateral declaration that all payments be halted.  At that meeting, the Receiver stated that MDI was doing an "excellent job" and ordered MDI to continue to perform.  MDI expressed reservations about continuing work without receiving payment.  In response, the Receiver threatened MDI, stating that if MDI failed to continue providing services, he would make sure MDI never worked in California again.

185.    The Receiver's threat to exclude MDI from the California prison health care market while acting in the name of this Court and under authority of a federal court, constituted an improper use of judicial power intended to force MDI to perform services at CCI and LAC without pay.

186.    The Receiver's threat to MDI constituted a willful and intentional act made in his capacity as a receiver.

187.    The Receiver has made good on his threats that he would "make sure MDI never worked in California again."  Since MDI was improperly terminated, it has been denied at least two state contracts on which it was either the lowest qualified bidder or a subcontractor to the lowest qualified bidder due, in part, to perceived "conflicts of interest" between MDI and the CDCR.

188.    As a direct and proximate result of the Receiver's abuse of process, MDI has suffered damages in excess of the minimum jurisdictional amount of this Court, the exact amount of which will be proven at trial.

189.    As a direct and proximate result of the Receiver's abuse of process, MDI has sustained a substantial detriment in the form of loss of future business and profits on other California contracts, which was a foreseeable and intended result of the Receiver's abuse of process.

190.    As a direct result of the Receiver's abuse of process, the life, health and safety of the CDCR's inmate population has been placed at risk.  MDI's lawsuit will therefore result in the enforcement of an important right affecting the public interest, namely unobstructed and unfettered access to private health care services that the CDCR itself cannot provide.

191.    Under the circumstances herein presented, the necessity and financial burden of enforcing this right make an award of attorneys' fees appropriate pursuant to Code of Civil Procedure section 1021.5.

192.    The attorneys' fees incurred in the enforcement of this right should not, in the interests of justice, be paid out of MDI's recovery.

WHEREFORE, MDI prays for relief as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, MDI prays for relief as follows:

### **As to the First Cause of Action for Breach of Contract against All Defendants**

1.    General damages, including payment for services rendered and lost future profits on the contract in an amount according to proof at trial;

2.    Special damages for lost future business and profits in an amount according to proof at trial;

3.    For interest at the legal rate as permitted by law;

4.    For reasonable attorneys' fees as permitted by law; and

5.    For such other and further relief as the Court may deem proper.

///

WATT, TIEDER,
HOFFAR &
FITZGERALD, L.L.P.
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT

1    <u>As to the Second Cause of Action for Wrongful Termination of Contract against All</u>

2    <u>Defendants</u>

3          1.    General damages, including payment for services rendered and lost future profits

4                on the contract in an amount according to proof at trial;

5          2.    Special damages for lost future business and profits in an amount according to

6                proof at trial;

7          3.    For interest at the legal rate as permitted by law;

8          4.    For reasonable attorneys' fees as permitted by law; and

9          5.    For such other and further relief as the Court may deem proper.

10   <u>As to the Third Cause of Action for Promissory Estoppel against All Defendants</u>

11         1.    For the CDCR and the Receiver to be estopped from denying the existence of a

12               valid and binding contract for services between the CDCR and MDI;

13         2.    General damages, including payment for services rendered and lost future profits

14               on the contract in an amount according to proof at trial;

15         3.    For interest at the legal rate as permitted by law;

16         4.    For reasonable attorneys' fees as permitted by law; and

17         5.    For such other and further relief as the court may deem proper.

18   <u>As to the Fourth Cause of Action for Quantum Meruit/Unjust Enrichment against All</u>

19   <u>Defendants</u>

20         1.    For damages equal to the fair and reasonable value of work, labor and services

21               rendered and performed by MDI to the CDCR and the Receiver, the value of

22               which is to be determined according to proof at trial;

23         2.    For interest at the legal rate as permitted by law;

24         3.    For reasonable attorneys' fees as permitted by law; and

25         4.    For such other and further relief as the court may deem proper.

26   <u>As to the Fifth Cause of Action for Assumpsit against All Defendants</u>

27         1.    For such amounts as are due and owing, in a precise amount according to proof at

28               trial;

1      2.    For interest at the legal rate as permitted by law;

2      3.    For reasonable attorneys' fees as permitted by law; and

3      4.    For such other and further relief as the court may deem proper.

4    **As to the Sixth Cause of Action for Account Stated against All Defendants**

5      1.    For such amounts as are due and owing, in a precise amount according to proof at

6            trial;

7      2.    For interest at the legal rate as permitted by law;

8      3.    For reasonable attorneys' fees as permitted by law; and

9      4.    For such other and further relief as the court may deem proper.

10   **As to the Seventh Cause of Action for Violations of California Prompt Payment Act against**

11   **All Defendants**

12     1.    For such amounts as are due and owing, in a precise amount according to proof at

13           trial;

14     2.    For reasonable attorneys' fees as permitted by law; and

15     3.    For all statutory penalties pursuant to California Prompt Payment Act, in an

16           amount according to proof at trial.

17   **As to the Eighth Cause of Action for Negligent Misrepresentation against Receiver**

18     1.    For general damages, in an amount according to proof at trial, including payment

19           for services rendered and lost future profits on the contract in an amount according

20           to proof at trial;

21     2.    For interest at the legal rate as permitted by law;

22     3.    For reasonable costs and expenses;

23     4.    For reasonable attorneys' fees as permitted by law; and

24     5.    For such other and further relief as the court may deem proper.

25   **As to the Ninth Cause of Action for False Promise against Receiver**

26     1.    For general damages, in an amount according to proof at trial, including payment

27           for services rendered and lost future profits on the contract in an amount according

28           to proof at trial;

| | | |
|---|---|---|
| 1 | 2. | For punitive damages; |
| 2 | 3. | For interest at the legal rate as permitted by law; |
| 3 | 4. | For reasonable costs and expenses; |
| 4 | 5. | For reasonable attorneys' fees as permitted by law; and |
| 5 | 6. | For such other and further relief as the court may deem proper. |

**As to the Tenth Cause of Action for Economic Duress against Receiver**

1. For general damages, in an amount according to proof at trial, including payment for services rendered and lost future profits on the contract in an amount according to proof at trial;

2. For special damages for lost future business and profits in an amount according to proof at trial;

3. For interest at the legal rate as permitted by law;

4. For reasonable costs and expenses;

5. For reasonable attorneys' fees as permitted by law; and

6. For such other and further relief as the court may deem proper.

///
///
///
///
///
///
///
///
///
///
///
///
///

**As to the Eleventh Cause of Action for Abuse of Process against Receiver**

     1.    For general damages, in an amount according to proof at trial, including payment for services rendered and lost future profits on the contract in an amount according to proof at trial;

     2.    For special damages for lost future business and profits in an amount according to proof at trial;

     3.    For punitive damages;

     4.    For interest at the legal rate as permitted by law;

     5.    For reasonable costs and expenses;

     6.    For reasonable attorneys' fees as permitted by law; and

     7.    For such other and further relief as the Court may deem proper.

Dated: February 23, 2010

                                    **WATT, TIEDER, HOFFAR**
                                      **& FITZGERALD, L.L.P.**

                              By:   /s/ Bennet J. Lee
                                  Bennett J. Lee (blee@wthf.com)
                                  Garrett E. Dillon (gdillon@wthf.com)
                                  Sara K. Hayden (shayden@wthf.com)
                                  Attorneys for Plaintiff
                                  MEDICAL DEVELOPMENT
                                  INTERNATIONAL

**JURY DEMAND**

    Plaintiff demands trial by jury on all issues so triable.

Dated:  February 23, 2010

                                    **WATT, TIEDER, HOFFAR**
                                      **& FITZGERALD, L.L.P.**

                              By:   /s/ Bennet J. Lee
                                  Bennett J. Lee
                                  Garrett E. Dillon
                                  Sara K. Hayden
                                  Attorneys for Plaintiff
                                  MEDICAL DEVELOPMENT
                                  INTERNATIONAL