IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL DEVELOPMENT INTERNATIONAL,<br><br>                Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>                Defendants. | NO. C10-0443 TEH<br><br><u>ORDER GRANTING RECEIVER'S MOTION TO DISMISS AND MOTION TO STRIKE</u> |

This matter came before the Court on May 17, 2010, on a motion to dismiss and a motion to strike brought by Defendant J. Clark Kelso, sued in his official capacity as the Receiver appointed by this Court in *Plata v. Schwarzenegger*, Case No. C01-1351 TEH. After carefully considering the parties' written and oral arguments, the Court now GRANTS the Receiver's motion to dismiss the tort claims asserted by Plaintiff Medical Development International ("MDI"), as well as the Receiver's motion to strike MDI's claims for attorneys' fees under California Code of Civil Procedure section 1021.5, for the reasons discussed below.

**BACKGROUND**

Plaintiff Medical Development International ("MDI") is a Delaware corporation that formerly provided, and contends that it had a valid contract to provide, medical services at two California prisons: California State Penitentiary, Los Angeles ("LAC") and California

Correctional Institution in Tehachapi ("CCI"). In this action, MDI challenges actions taken by the Receiver appointed by this Court in *Plata* to "exercise all powers vested by law in the Secretary of the CDCR [California Department of Corrections and Rehabilitation] as they relate to the administration, control, management, operation, and financing of the California prison medical health care system." Feb. 14, 2006 Order in *Plata* at 4.

MDI originally sought to intervene in *Plata* and have its motion for intervention heard on shortened time. This Court denied MDI's motion on April 16, 2007, explaining that there was no basis to hear the motion on shortened time. MDI did not re-file its motion to intervene to be heard on a regularly noticed schedule.

Instead, MDI sued the Receiver in California Superior Court for the County of Sacramento, and the Receiver removed the case to the United States District Court for the Eastern District of California. That court dismissed the case because MDI failed to get permission from this Court to sue the Receiver. MDI appealed the court's decision to the United States Court of Appeals for the Ninth Circuit.

MDI subsequently filed a motion in this Court for leave to sue the Receiver. The Court denied that motion on June 24, 2008, on grounds that the Receiver would be immune from suit as a judicial officer. MDI also appealed that decision to the Ninth Circuit.

On October 30, 2009, the Ninth Circuit issued a decision that affirmed in part and vacated in part both district court orders. *MDI v. CDCR*, 585 F.3d 1211 (9th Cir. 2009). The court held that removal to federal court was proper, that MDI did not need permission from this Court to sue the Receiver, and that the Receiver did not enjoy absolute judicial immunity from suit. The case was remanded to the Eastern District of California.

Following remand, the Eastern District granted the Receiver's motion to transfer venue to the Northern District, and this Court found the case to be related to *Plata*. MDI filed its first amended complaint on February 23, 2010, asserting eleven causes of action sounding in both contract and tort under California state law.

The Receiver now seeks dismissal of MDI's tort causes of action, numbers eight through eleven. In the eighth cause of action for negligent misrepresentation, MDI alleges

2

that the Receiver knew "that he would not pay MDI for services rendered under any circumstances" but misrepresented to MDI on February 16, 2007, that it "could be paid for services rendered if it [was] determined that MDI needed no medical license." First Am. Compl. ("FAC") ¶ 145. The "representations by the Receiver that MDI had an opportunity to correct any alleged problems or defects regarding the issue of the corporate practice of medicine or medical licensure issues were untrue," *id.* ¶ 146, and "were made with the intent to induce MDI to continue performing services at LAC and CCI without pay," *id.* ¶ 148. The ninth cause of action for false promise alleges that the above misrepresentation was also a "promise made without an intent to honor or perform it." *Id.* ¶¶ 157-58.

The tenth cause of action for economic duress is based on the same February 16, 2007 meeting, as well as an allegation that "[i]n or around January 2007, the Receiver unilaterally declared that all payments to MDI by the CDCR for services rendered pursuant to the contract were to be halted. However, the Receiver also demanded that MDI continue to perform under the terms of the Contract Documents without payment." *Id.* ¶ 168. MDI alleges that, at the February 16 meeting, which was held "to discuss the ongoing relationship between MDI and the CDCR and the Receiver's unilateral declaration that all payments be halted," the Receiver "ordered MDI to continue to perform. MDI expressed reservations about continuing work without receiving payment. In response, the Receiver threatened MDI, stating that if MDI failed to continue providing services, he would make sure MDI never worked in California again." *Id.* ¶ 169. MDI contends that "[a]s a result of the Receiver's threat, and fearing for its future ability to do business in California, MDI was forced to continue providing services to the CDCR without payment for the purpose of protecting its business interests in the State of California and avoiding exclusion from California's prison health care market." *Id.* ¶ 172.

The eleventh cause of action for abuse of process asserts that "[t]he Receiver's threat to exclude MDI from the California prison health care market while acting in the name of this Court and under authority of a federal court, constituted an improper use of judicial power intended to force MDI to perform services at CCI and LAC without pay." *Id.* ¶ 185.

3

1 MDI further contends that "[t]he Receiver's threat to MDI constituted a willful and
2 intentional act made in his capacity as a receiver." *Id.* ¶ 186.

3 In addition to moving to dismiss the above four tort causes of action, the Receiver also
4 moves to strike from the complaint all claims for attorneys' fees under California's private
5 attorney general statute, California Code of Civil Procedure section 1021.5.

**LEGAL STANDARD**

**I.   Motion to Dismiss**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice."[1] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Courts must generally "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007), but "are not bound to accept as true a legal conclusion couched as a factual allegation," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citation omitted).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with

---

[1] Thus, the Court GRANTS the Receiver's motion to strike the Declaration of Garrett E. Dillon filed by MDI in support of its opposition. At oral argument, counsel for MDI stated that MDI did not have any objections to this motion to strike.

leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

## II. <u>Motion to Strike</u>

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike may be used to remove "requested relief, such as punitive damages, which is not recoverable as a matter of law." *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *see also, e.g., K.H. v. Mt. Diablo Unified Sch. Dist.*, Case No. C 04-5400 SI, 2005 WL 1656895 (N.D. Cal. July 14, 2005) (granting motion to strike request for attorneys' fees that lacked any legal basis).

Motions to strike are regarded with disfavor, as they are often used as delaying tactics, and should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "However, where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken." *California ex rel. State Lands Comm'n. v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981). When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party. *Id.* at 39.

## DISCUSSION

## I. <u>Motion to Dismiss</u>

The Receiver moves to dismiss MDI's tort causes of action on a variety of state law immunity and other grounds. As an initial matter, the Court rejects MDI's argument that questions of immunity cannot be decided at the pleadings stage. Even the authority relied on by MDI demonstrates that courts may make immunity determinations when considering only the pleadings. *E.g., Harmston v. City & County of San Francisco*, Case No. 07-1186 SI,

5

1 2007 WL 2814596, at *4-*7 (N.D. Cal. Sept. 25, 2007) (granting motion for judgment on the
2 pleadings as to certain claims on immunity grounds, but finding that further factual
3 development was necessary as to other claims).  The Court's discussion below assumes the
4 allegations in the complaint to be true, as required when considering a motion to dismiss.

5 With the exception of California Government Code section 820.2, MDI does not
6 contest that the Receiver may invoke immunity under state law; it argues only that the
7 claimed immunities do not apply in the specific factual circumstances alleged.  For the
8 reasons discussed below, the Court finds that immunity under California Government Code
9 section 818.8 applies to MDI's negligent misrepresentation and false promise claims, and
10 that immunity under California Government Code section 821.6 applies to MDI's economic
11 duress and abuse of process claims.  The Court therefore need not and does not reach the
12 Receiver's other arguments.

### A. California Government Code § 818.8

14 The Receiver argues that California Government Code section 818.8, which provides
15 that "[a] public entity is not liable for an injury caused by misrepresentation by an employee
16 of the public entity, whether or not such misrepresentation be negligent or intentional,"
17 shields him from liability for all of MDI's tort causes of action.  The statute "grants public
18 entities immunity for negligent misrepresentation but not for negligence." *Jopson v. Feather*
19 *River Air Quality Mgmt. Dist.*, 108 Cal. App. 4th 492, 495 (2003).

20 Although "the articulation of an easy formula may prove difficult, the facts of the state
21 and federal immunity cases provide clear guidance." *Id.* at 497.  In cases where immunity
22 has been found to apply, the plaintiff "couched his allegations as a claim for either
23 intentional misconduct or negligence, not misrepresentation. . . .  Essential to each claim was
24 the plaintiff's reliance upon misinformation communicated to him by the government." *Id.* at
25 498.  For example, city inspectors were immune from liability when they allegedly signed off
26 on building inspections stating that a residence under construction met all applicable building
27 codes when they, in fact, knew that it did not, and the plaintiffs subsequently had to pay
28 nearly $300,000 to bring their residence up to code.  *Harshbarger v. City of Colton*, 197 Cal.

6

App. 3d 1335, 1342 (1988).  Similarly, immunity applied to bar a fraud claim "based on allegations that defendants told [plaintiff] her application [for disability benefits] would be ruled upon fairly and within three to five months, but that these representations were false." *Masters v. San Bernadino County Employees Ret. Ass'n*, 32 Cal. App. 4th 30, 37 (1995). Immunity was also found to apply where plaintiffs purchased real property in reliance on a city's representation "that the property included two dwelling units which were legally authorized under the city zoning law," when, in fact, "two dwelling units were not authorized under the city zoning regulations" and "the second unit on the property could not lawfully be rented."  *Grenell v. City of Hermosa Beach*, 103 Cal. App. 3d 864, 867-68 (1980).

By contrast, cases where the immunity was not found to apply all "involved an alleged breach of duty arising from governmental conduct completely divorced from any attendant communication," *Jopson*, 108 Cal. App. 4th at 499; that is, in each case, "the governmental entity became integrally involved in causing the plaintiff's damage, not merely by inflating the plaintiff's expectations," *id.* at 501.  Thus, for example, in *Guild v. United States*, 685 F.2d 324 (9th Cir. 1982), the Ninth Circuit found that 28 U.S.C. § 2680(h), a federal immunity statute analogous to section 818.8, did not shield the government from liability. The court explained that "[t]he Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved.  It is not liable, however, for injuries resulting from commercial decisions made in reliance on government misrepresentations."  *Id.* at 325.  Applying that rule to the facts of the case, the court held that:

> In our case the Government engaged in a species of engineering malpractice.  It undertook the design and planning for the dam and reservoir.  Designing the dam and reservoir was an operational task and the Government performed it negligently.  Any communication of misinformation was collateral.  The misrepresentation exception does not apply on these facts because the essence of the complaint is one for failure to take due care in the performance of a voluntary task.

*Guild*, 685 F.2d at 326.  In other words, "the essence of the complaint" was not "reliance upon misinformation communicated by the Government."  *Id.*

7

Based on the above framework, this Court concludes that the Receiver is immune from liability under section 818.8 for MDI's causes of action for negligent misrepresentation and false promise, but not for the economic duress or abuse of process causes of action. In the former two causes of action, the claimed injuries arose from allegations that MDI relied on the Receiver's false statements that MDI would be paid for services rendered. As made clear in a case relied on by MDI, the government "is not liable . . . for injuries resulting from commercial decisions made in reliance on government misrepresentations," *Guild*, 685 F.2d at 325 – precisely the allegations here.

The economic duress and abuse of process claims, on the other hand, stem from the Receiver's threats that MDI must continue to perform the terms of the contract without payment and that, if it did not, the Receiver would ensure that MDI would be excluded from future contracts with California prisons. These claims do not stem from alleged misrepresentations and, instead, involve alleged misconduct "completely divorced from any attendant communication." *Jopson*, 108 Cal. App. 4th at 499. Accordingly, section 818.8 does not shield the Receiver from liability for these two causes of action.

### B. California Government Code § 821.6

However, the Court finds merit to the Receiver's argument that he is immune from liability for MDI's economic duress and abuse of process claims under California Government Code section 821.6.[2] That statute provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.

//
//
//
//

---

[2] The Receiver does not contend that section 821.6 applies to MDI's negligent misrepresentation or false promise claims.

8

1    MDI's only argument against application of section 821.6 is that the immunity does
2 not apply because the Receiver was acting outside the scope of his authority.[3]  When the
3 Ninth Circuit rejected the Receiver's claim for judicial immunity, the court explained that:

> MDI's claim does not challenge his authority as a Receiver, nor does it seek to recover for any act for which specific instructions were received from the court.  The Northern District could not simply declare CDCR immune from legal obligations.  Neither could it assign plenary power to the Receiver to refuse to permit CDCR to pay its legal obligations.

*MDI*, 585 F.3d at 1222 (footnote omitted).  While this discussion arose in a different context, it makes clear that – assuming the allegations in the complaint to be true, as this Court must at this stage of the proceedings – the Receiver acted outside the authority granted him by the Court.

However, the question is not whether the Receiver was acting within the scope of his *authority*; the issue is whether he was acting within the scope of his *employment*.  MDI relies heavily on a statement from the California Supreme Court that "a public officer is liable for injuries caused by acts done outside the scope of his authority," but reading that statement in context reveals that, by "authority," the court appears to have meant "duties of employment." *White v. Towers*, 37 Cal. 2d 727, 733 (1951).  The plaintiff argued that the defendant "was acting outside the scope of his authority in instituting proceedings in the federal court." *Id.*  The court rejected that argument, finding that the defendant "was no less discharging his duty to enforce the laws for the protection of fish and game by instituting the proceeding in the federal court than he would have been if all proceedings had been instituted in the state courts." *Id.*  The court went on to explain that "[d]uties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes." *Id.* (citation omitted).

---

[3] Indeed, MDI cannot argue that the Receiver's actions did not concern "instituting or prosecuting any judicial or administrative proceeding" since the basis for its abuse of process claim is that the Receiver's actions constituted use of the judicial process.

9

In this case, the Court specifically granted the Receiver the power "to control, oversee, supervise, and direct all administrative personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." Feb. 14, 2006 Order in *Plata* at 2. "The Receiver also shall be empowered to negotiate new contracts and to renegotiate existing contracts, including contracts with labor unions, in the event that such action is necessary for the Receiver to fulfill his duties under this Order." *Id.* at 4. Thus, the Receiver was clearly acting within the scope of his employment when engaging in the conduct alleged by MDI. In fact, as the Ninth Circuit noted, "MDI has conceded that it is suing the Receiver over the performance of his court-appointed duties." *MDI*, 585 F.3d at 1216.

Although the Receiver did not have authority from this Court to engage in tortious misconduct, that does not eviscerate immunity under section 821.6. As one district court persuasively explained:

> The public policy behind immunity from civil liability for public officials is to free them from any fear of litigation or harassment while performing essential duties. Such immunity applies even if the public officials engage in a malicious abuse of their power, proceed without probable cause or conceal exculpatory evidence. "[I]n the end it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Hardy v. Vial*, 48 Cal. 2d 577, 583, 311 P.2d 494 (1957) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

*Garcia v. County of Merced*, 637 F. Supp. 2d 731, 751-52 (E.D. Cal. 2008) (citations omitted). The court therefore concluded that section 821.6 immunity shielded officials from an abuse of process claim based on obtaining arrest warrants – "an activity conducted in the process of an investigation and . . . routinely within the scope of a prosecutor's and officer's employment" – even though they allegedly did so "by using false evidence and concealing essential exculpatory evidence from the magistrate." *Id.* at 750, 752. Similarly, in this case, section 821.6 shields the Receiver from liability for MDI's abuse of process and economic duress causes of action, even though the Receiver was not authorized by the Court to use threats to force a company to provide services without pay. "That the complaint alleges

10

1  improper conduct . . . does not alter the fact that the acts alleged fall within the scope of
2  employment.  To hold otherwise would mean that an impropriety which provides a basis for
3  liability would also provide a basis for vitiating immunity from such liability, thus making a
4  mockery of section 821.6." *Randle v. City & County of San Francisco*, 186 Cal. App. 3d
5  449, 457 (1986) (citation omitted).

## II. Motion to Strike Claims for Attorneys' Fees

In addition to moving to dismiss the tort causes of action, the Receiver moves to strike all claims for attorneys' fees under California Code of Civil Procedure section 1021.5, which provides that:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

This statute "was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." *Beach Colony II v. Cal. Coastal Comm'n*, 166 Cal. App. 3d 106, 114 (1985).  Instead:

> The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right.  To encourage such suits, attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action.

*Id.* (citations omitted).  "It is within the trial court's discretion to deny attorneys' fees pursuant to section 1021.5 on the ground that the plaintiff's personal stake in the outcome was not disproportionate to the burden of private enforcement, even where the litigation enforced an important right and conferred a significant benefit upon the public." *Satrap v. Pac. Gas & Elec. Co.*, 42 Cal. App. 4th 72, 78 (1996).

11

1    MDI contends that its "motivation was to publicize and seek redress for the Receiver's
2 trampling on the rights of CDCR contractors and violating the laws of the State of
3 California." Opp'n at 22.  The company also contends that it has incurred approximately
4 $750,000 in attorneys' fees in this case and that "it will still be operating at a major loss
5 overall" even if it prevails.  *Id.*  Thus, according to MDI, any pecuniary interest it has is
6 outweighed by the "significant benefit conferred both upon the public, regarding the
7 provision of constitutionally mandated health care services to state inmates, and to a large
8 class of persons, specifically contractors dealing with the Receiver and state entities in
9 general." *Id.* at 23.

10    MDI's argument is not persuasive in light of the company's contention that it is owed
11 $37,369,476.85 in damages, penalties, and interest, not including punitive damages.[4]
12 May 10, 2010 Joint Case Mgmt. Statement at 6-7.  Unquestionably, this amount – and even
13 the more than $2.6 million MDI claims it is entitled to as reimbursement for services
14 provided, *id.* at 6, were that to be considered alone – is more than sufficient financial interest
15 "to encourage private litigation to enforce the right." *Beach Colony II*, 166 Cal. App. 3d at
16 114; *see also, e.g., Satrap*, 42 Cal. App. 4th at 78 (describing several cases where section
17 1021.5 attorneys' fees were denied, including a case where the court held that "damages of
18 $60,000 was sufficient financial incentive for litigation challenging permit limiting on-site
19 performance of abortions, and fees [were] denied despite enforcement of public right of
20 access").  Accordingly, the Receiver's motion to strike all claims for attorneys' fees under
21 California Code of Civil Procedure section 1021.5 is GRANTED.

---

[4] It is not clear that MDI is entitled to punitive damages.  "California Government Code § 818 bars any award of punitive damages against a public entity." *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1113 (9th Cir. 1991).  Thus, because this is a suit against the Receiver in his official capacity and therefore a suit against the state, it would appear that punitive damages are not available here. *See, e.g., Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (error to award punitive damages against county officials sued in official capacities when county is immune from punitive damages under 42 U.S.C. § 1983). However, the Receiver has not moved to strike the prayer for punitive damages, and, in any event, MDI only seeks punitive damages on the false promise and abuse of process claims that the Court dismisses in this order.  *See* FAC at 32-36 (prayer for relief).

**CONCLUSION**

For the above reasons, the Receiver's motion to dismiss MDI's tort claims is GRANTED. The Receiver is immune from liability for MDI's negligent misrepresentation and false promise causes of action under California Government Code section 818.8, and immune from liability for MDI's economic duress and abuse of process causes of action under California Government Code section 821.6.

The motion to strike MDI's claims for attorneys' fees under California Code of Civil Procedure section 1021.5 is also GRANTED. MDI does not meet the criteria for obtaining fees under California's private attorney general statute because its financial interests are sufficient to encourage private litigation.

**IT IS SO ORDERED.**

Dated:   05/21/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT